IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 2, 2016 Session

**STATE OF TENNESSEE v. TERRELL HAYES**

**Appeal from the Criminal Court for Shelby County
No. 13-03971    J. Robert Carter, Jr., Judge**

_____

**No. W2015-00661-CCA-R3-CD  -  Filed April 22, 2016**

_____

Defendant, Terrell Hayes, was convicted of two counts of aggravated robbery after a jury trial.  Defendant was sentenced to an effective sentence of ten years.  After the denial of a motion for new trial, Defendant timely sought an appeal.  The following issues are presented for our review: (1) whether the trial court improperly prohibited Defendant from introducing evidence about codefendant Timothy Williams's prior robbery charge; and (2) whether the trial court erred in failing to grant a mistrial and/or allowing counsel to testify as a witness for the defense.  After a review, we determine the trial court erred in refusing to allow Defendant to question witnesses about the prior robbery.  However, we determine the error was harmless.  Defendant failed to raise the issue with regard to counsel's testimony in the motion for new trial. This issue is waived.  Accordingly, the judgments of the trial court are affirmed.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, J., joined.  CAMILLE R. MCMULLEN, J., concurring in results only.

M. Haden Lawyer, Memphis, Tennessee, for the appellant, Terrell Hayes.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Meghan Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

This is Defendant's direct appeal from a jury's verdict in the Criminal Court of Shelby County for two counts of aggravated robbery. He and Timothy Williams were indicted by the Shelby County Grand Jury in September of 2013 for their role in the robbery of a Wendy's restaurant in Memphis.

Quiouna Patterson and Marilyn Downs were employees of the Wendy's restaurant. On December 17, 2012, when they were closing the restaurant for the night, they were approached as they were exiting by a man with a gun, later identified as Defendant. The women were forced back inside the restaurant. The gunman was followed by two other men, one of whom was identified as codefendant Williams. Ms. Downs opened one safe. The men accompanying Defendant took coin trays from the safe, put it into a trash can, and removed it from the restaurant. Ms. Patterson's cell phone was also taken during the incident. Two other men, Andrew Jones and someone named "Mookie," were also identified as being involved in the crime. Security footage from the store next door revealed three men loitering in the parking lot for approximately thirty minutes before they entered the restaurant.

Mr. Williams was identified by police as a suspect when his fingerprints were found on coin trays and a cooking pan that were taken from the restaurant and recovered after the robbery.

Ms. Patterson identified Defendant after viewing several photo lineups. She noted that she got a "very good look" at Defendant during the ordeal and that he had "twists" in his hair at the time of the robbery but did not have the same hairstyle in the photograph. On the back of the photo lineup she wrote, "looks familiar, hair kind of different, looks like the guy with the gun that robbed Wendy's, I am certain this is the guy with the pistol." The arresting officer, Darnell Gooch, confirmed that Defendant had twists in his hair on the day of the arrest and a different hairstyle at the time of trial. Ms. Downs also identified Defendant from a photo lineup and in court. She was "100 percent" sure of her identification of Defendant but admitted that she was unable to identify him at a previous hearing because it was "kind of dark" and everyone was seated.

During the cross-examination of Ms. Patterson, counsel for Defendant sought to show Ms. Patterson photographs of three of Mr. Williams's codefendants from his previous robbery conviction. The trial court did not allow counsel to show her the photographs but told counsel that he could show the photographs to the victims outside of the courtroom. Apparently, at some point after the testimony of Ms. Patterson, counsel for Defendant showed the photographs to Ms. Downs, the other victim, outside the courtroom. This occurred prior to Ms. Downs's testimony. During the cross-examination of Ms. Downs, counsel for Defendant showed the witness two photographs

of Mr. Williams's prior codefendants. Ms. Downs testified that she recognized the picture as a "picture of a person—a person that's a criminal." She testified that she did not know who was in the photographs but recalled looking at the photographs earlier and saying that the men in the photographs looked familiar.

Prior to the start of the second day of trial, counsel for Defendant made a motion for a mistrial. Counsel stated that he showed two photographs of Mr. Williams's prior codefendants to Ms. Downs outside the courtroom. When she observed the photographs outside the courtroom she indicated that she recognized the men from the robbery. During her testimony, Ms. Downs stated that she did not recognize the men in the photographs. Counsel argued that Defendant had a right to impeach Ms. Downs and that he could not be a witness for his client so the trial court had to grant the mistrial. The trial court denied the mistrial.

Codefendant Williams testified for the State that he was at home when Defendant, Andrew Jones, and Mookie drove to his house. He was unaware where they were going or what they were doing until they got about halfway to the restaurant. Mr. Williams admitted that he originally told police that he was not involved in the robbery. When confronted with the fact that his fingerprints were found on the coin trays, Mr. Williams told police that Mr. Jones went into the restaurant first, whereas at trial he stated that Defendant went inside first. Mr. Williams claimed it was a misunderstanding, that he "said it wrong" when he told police Mr. Jones went in first. Mr. Williams told police that Mr. Jones waited by the car. After the robbery, the men separated. At the time of the robbery, Mr. Williams was dating Defendant's sister. He also acknowledged a prior conviction for solicitation of robbery.

Mr. Williams testified that he quit school in ninth grade and that he could not read or write. Sergeant Casey Minga interviewed Mr. Williams. Sergeant Minga did not think there was a misunderstanding during the taking of the statement. Mr. Williams clearly indicated that Mr. Jones was the first to enter the restaurant. After interviewing Mr. Williams, Sergeant Minga did not investigate anyone else because his statement was consistent with the videotape evidence and the statements of the victims.

Lucinda Johnson, Defendant's sister, testified that she dated Mr. Williams and eventually broke off the relationship. She did not describe Defendant and Mr. Williams as friends. They did not spend time together on a regular basis.

Defendant's girlfriend, Brittany Brown, testified. At the time of trial, she and Defendant had known each other for ten years. Ms. Brown and Defendant lived together at the home of Ms. Brown's mother. There was a strict midnight curfew at the house. Ms. Brown's mother locked the door after midnight.

Defendant testified at trial that he was friends with Mr. Jones but not Mr. Williams. Defendant admitted that he knew Mr. Williams because of his sister but that they did not spend time together. Defendant claimed that he did not know anyone named Mookie but that he had a cousin named "Pookie." Defendant denied ever having a "gold twist" hairstyle.

The jury found Defendant guilty of two counts of aggravated robbery. The trial court sentenced Defendant to concurrent ten-year sentences. Defendant filed a timely notice of appeal after the denial of a motion for new trial.

*Analysis*

*I. Denial of Mistrial/Prevention of Testimony by Trial Counsel*

Defendant argues that the trial court "erred by prohibiting defense counsel from testifying for the purpose of impeaching the victim's inconsistent statement" and by refusing to grant a mistrial once defense counsel became a necessary witness. Specifically, Defendant complains that trial counsel was unable to adequately impeach Ms. Downs's testimony without testifying as a witness. The State argues that Defendant raises this issue for the first time on appeal and, therefore, it is waived.

At trial, Ms. Downs testified that Defendant was the gunman during the robbery. Trial counsel sought to show Ms. Downs pictures of Mr. Williams's former criminal associates in order to determine if she could identify any of the men as participants in the robbery. The trial court refused to allow counsel to do so but informed counsel that he could show the photographs to the witness outside the courtroom after her testimony. Counsel argued the next day that he showed Ms. Downs photographs of two of Mr. Williams's former associates outside the courtroom and she indicated that she recognized them from the robbery. When counsel questioned Ms. Downs on cross-examination, the following exchange occurred:

[Counsel]: Do you recall looking at those pictures, earlier?

[Ms. Downs]: Yes.

[Counsel]: And when you looked at them earlier, you said that they looked familiar to you.

[Ms. Downs]: Yes.

[Counsel]: I just want to be clear that they no longer look familiar to you?

- 4 -

(A brief pause was had in the proceedings).

[Ms. Downs]: I guess they look familiar, but I'm not – they look familiar to me.

[Counsel]: In what way do they look familiar?

[Counsel for State]: Judge.

[The Court]: Again, y'all may approach.

(A bench conference was had in the proceedings).

[The Court]: [Counsel for Defendant], I think, are you saying they look familiar, unless she is going to make an identification, it is just not relevant.

[Counsel]: My concern, Your Honor, is that after she told me earlier that she heard all of this at the –

[The Court]: No, my concern is that she got under oath and has told you when y'all were chatting what you wanted to hear and then once she got under oath she was hesitant to say, "I identify this person." And I think she definitely can ask it, but what I think that what you're asking her to do is identify someone and she is clearly unwilling to say under oath that this is somebody.

. . . . [Conclusion of bench conference.]

[Counsel]: Are you unable to identify this photo?

[Ms. Downs] Yes, sir.

The next day, counsel for Defendant moved for a mistrial. He argued to the trial court that he questioned Ms. Downs in the hallway and she told him that the men in the pictures looked like the men that robbed the store and that he could not serve as both counsel and a witness. The trial court denied the mistrial, stating:

You know, when it is an oral conversation and it's your characterization that she said something different, you know, I just don't see that. I mean, she testified here and I take you at your word that it is your belief that she felt more familiar with the photos, whatever they were,

when you were showing them to her by yourself, under none of the safeguards that anybody ever had, you're showing her a single shot photograph going, "Weren't these the people that were with you," or whatever.

And again, I don't know what you did. But you show that and then you call the witness and only because you asserted that you had a good faith basis for the fact that she may recognize them, that I let you ask that in front of the jury. And then, under oath, she said, no.

And then you said, "Didn't you just tell me that?" And she was, equivocal, at best. I don't recall her saying, "No, I never told you that." She just kept saying, "I'm not sure. I am not certain." And had she said, "No, I never told you that," then I think you would be, probably, entitled to impeach to that limited extent. But, she was just equivocal about it. I think that it was very clear that she wasn't sure what, or who those [men] were. She did say in front of the jury at one point that she thought one of them looked familiar. She couldn't say from where and you tried – I mean, all you can do without speaking for the witness is to say, "she just was unwilling, or unable."

Counsel for Defendant argued that he had the right to impeach the testimony. The trial court commented that "to the extent that you cross-examined on it, you did" but that the court was "not inclined to grant a mistrial at this point." Counsel for Defendant did not make an offer of proof as to his testimony or ask to be removed from the case.

In the motion for new trial, Defendant argued that the trial court erred in failing to grant the mistrial. At the hearing on the motion, the argument regarding this issue was whether the trial court erred in failing to grant a mistrial. Now, on appeal, Defendant argues that the trial court erred by refusing to let Counsel testify *and* that the trial court erred in refusing to grant a mistrial. To the extent that Defendant failed to raise the issue with regard to counsel testifying in the trial court below, it is waived on appeal. A party may not litigate or assert a new basis or ground for relief on appeal. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, *unless the same was specifically stated in a motion for a new trial*; otherwise such issues will be treated as waived." (emphasis added)); *see also State v. Leach*, 148 S.W.3d 42, 55 (Tenn. 2004).

Moreover, the granting of a mistrial is a matter resting within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Nash*,

294 S.W.3d 541, 546-47 (Tenn. 2009). A mistrial should only be granted when there is a "manifest necessity" for such action. *Id.* In this case, Defendant actually created the situation about which he now complains. Counsel questioned the witness about the photographs in the hallway and wanted to testify to show that her statements in the hallway were somewhat different than her statements on the stand during cross-examination. Counsel was ultimately able to question Ms. Downs on the stand about the identification of the photographs and she denied knowing the men. However, counsel sought to use his own testimony to impeach her testimony in which she denied making the identifications in the hallway. The trial court did not abuse its discretion in denying a mistrial. The evidence against Defendant was overwhelming. Both of the victims identified Defendant as the gunman prior to trial and again at trial. Defendant is not entitled to relief on this issue.

## II. Right to Present a Defense

On appeal, Defendant insists that the trial court prevented Defendant "from presenting a defense by precluding him from questioning the witnesses about the details of [Mr.] Williams's prior robbery and his prior codefendants." Defendant relies on *State v. Flood*, 219 S.W.3d 307, 315-16 (Tenn. 2007), to support his argument that he should have been permitted to introduce the existence of the prior codefendants and the circumstances of the prior robbery into evidence. The State, on the other hand, argues that the trial court excluded the evidence because it was not relevant and, in any event, Defendant waived the issue by failing to make an offer of proof that would allow this Court to analyze the excluded evidence under *Flood*.

Evidence must be relevant to be admissible. Tenn. R. Evid. 402. Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. Prejudicial evidence is not excluded as a matter of law. *State v. Carruthers*, 35 S.W.3d 516, 577 (Tenn. 2000) (citing *State v. Gentry*, 881 S.W.2d 1, 6 (Tenn. Crim. App. 1993)). The term "undue prejudice" has been defined as "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978) (quoting Fed. R. Evid. 403, Advisory Comm'n Notes). We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard. *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008).

In this case, Defendant argues that because his primary defense was that Mr. Williams named Defendant as the perpetrator in order to protect his "true accomplices"—

people with whom he committed a prior robbery—the trial court excluded critical evidence when it refused to allow Defendant to introduce evidence about Mr. Williams's prior offense and the failure of the police to investigate those known criminal associates. During the investigation, Mr. Williams admitted his involvement in the crime and implicated Defendant as the gunman. Prior to trial, the State filed a motion in limine seeking to prohibit Defendant from asking Mr. Williams about a prior conviction for solicitation of robbery and why the accomplices in that crime were not questioned by the police. The State argued that if Defendant could ask these questions, the State would be entitled to show that two of Mr. Williams's three criminal associates were in jail at the time of the Wendy's robbery. Defendant, in turn, argued that Mr. Williams was threatened by his former criminal associates before being questioned by police. The trial court permitted Defendant to question the police about their general investigation but prohibited direct mention of or questioning about Mr. Williams's accomplices in the solicitation of robbery conviction. The trial court stated that the determination to exclude the evidence was on the basis of relevance, commenting:

> You were simply assuming because a person who is going to be a witness, you think, or that I think, in this case, has been convicted of another offense, with others, that those people would be more likely to be the individual that committed the second offense. And I don't find that.
>
> I mean, I don't see that as relevant. You can ask this officer did he investigate anybody else. Your point was that once Mr. Williams named your client and they took his pictures and he was identified in two separate photospreads, they stopped looking for others. And that is your argument to the jury and you're free to make it.

After the trial court stated that it determined that the evidence was irrelevant, the trial court went on to make what we perceive as a finding of the prejudicial nature of the evidence under Tennessee Rule of Evidence 403. The trial court commented that evidence of Mr. Williams's prior robbery conviction was "propensity evidence." The trial court explained that just "because Mr. Williams was convicted of a robbery related charge[], . . . that [does not mean that] somehow you should be able to try to bring in extrinsic evidence and enter it . . . You want to cross[-]examine him about the details of a conviction which is no part of this case, other than to the effect that the jury may, if they choose, weigh it as to the credibility of Mr. Williams, the fact that he has been convicted [and this will not be permitted]." Counsel for Defendant argued at trial that the evidence was to be admitted to impeach the investigation and Mr. Williams's testimony. Now, on appeal, Defendant argues that the trial court prohibited him from asking about the former criminal associates of Mr. Williams, something that was, in his view, "critical in rebutting the victims' identification of [Defendant]" because the identification of Defendant by the victims was unreliable.

The State submits that because Defendant failed to make an offer of proof regarding this evidence, he has waived this issue. *See State v. Innocent S. Nzamubereka*, No. E2009-00755-CCA-R3-CD, 2011 WL 255368, at *12 (Tenn. Crim. App. Jan. 20, 2011) (citing *Flood* and determining that issue waived for failure to make an offer of proof with regard to excluded testimony). We disagree as we are able to determine from the record what the excluded testimony would have been, at least with regard to the existence of the previous conviction and the codefendants and the victim's identification of photographs of Mr. Williams's former codefendants.

Moreover, we conclude that the evidence was relevant and the trial court abused its discretion in excluding the evidence. "It has long been recognized by the courts of this state that an accused is entitled to present evidence implicating others in the crime." *State v. Powers*, 101 S.W.3d 383, 394 (Tenn. 2003) (citing *Sawyers v. State*, 83 Tenn. 694, 695 (1885)). The *Powers* Court stated that the determination of whether such evidence is admissible is one of relevancy. Identity of the perpetrator was certainly at issue herein. Thus, presentation of evidence tending to prove someone else may have committed the crime was relevant to bolster Defendant's theory that Mr. Williams and his former codefendants were actually the persons who committed the crime. Mr. Williams certainly had motive to implicate Defendant as a perpetrator in the crime in order to lessen his own culpability for the offense. While the strength of this defense is not iron-clad and Defendant was allowed to introduce at least the fact of Mr. Williams's prior conviction for solicitation of robbery on cross-examination, he was not able to directly ask Sergeant Minga about why Mr. Williams's former associates were not pursued as possible suspects and was prohibited from further questioning of the victims about whether they recognized the former associates. Consequently, we determine the trial court abused its discretion by refusing to allow admission of relevant information about the identity of the perpetrator. Any analysis under *Flood* is foreclosed based on our determination that the trial court abused its discretion in excluding the evidence.

However, any error was harmless. The State's case was not entirely dependent on the testimony of Mr. Williams, the codefendant. Both of the victims identified Defendant as the gunman from a photographic lineup and in court. Further, counsel for Defendant was ultimately able to question Ms. Downs about the photographs of the former codefendants on cross-examination. She admitted that she said previously that they looked familiar but that she could not identify the men. The jury heard this attempt to impeach the victims' identification of Defendant and obviously, by their verdict, believed that the victims identified Defendant as the perpetrator. Moreover, the State had already informed the trial court that if Defendant were allowed to pursue this line of questioning, they would introduce evidence that the former associates were actually in jail at the time of the robbery. Lastly, there was no evidence that the former associates were in any way connected with the robbery. Defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

TIMOTHY L. EASTER, JUDGE