STATE of Tennessee

v.

Scott Houston NASH.

Supreme Court of Tennessee,
at Nashville.

June 2, 2009 Session.

Oct. 7, 2009.

Kenneth K. Crites, Centerville, Tennessee, for the Appellant, Scott Houston Nash.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; James E. Gaylord, Assistant Attorney General; and R. Stephen Powers, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

The Defendant, Scott Houston Nash, was convicted of fourth offense driving under the influence ("DUI"), a Class E felony, and sentenced to serve two years in the Department of Corrections. The Court of Criminal Appeals affirmed Mr. Nash's sentence. On appeal to this Court, we review the following issues: (1) whether the trial court abused its discretion in determining that a trial witness' unsolicited reference to Mr. Nash's prior DUI arrests was not so prejudicial as to warrant a mistrial; (2) whether the trial court abused its discretion in permitting the judicial commissioner who initially determined probable cause to testify at the trial as to Mr. Nash's condition when he arrived at the police department; and (3) whether the recall of the previously discharged jury for the enhancement portion of Mr. Nash's

bifurcated trial violated his constitutional rights. Upon review, we hold: (1) the trial court did not abuse its discretion in ruling that an unsolicited reference to prior DUI arrests did not warrant a mistrial in this instance; (2) the trial court did not abuse its discretion in allowing the judicial commissioner to testify in this case; and (3) the recall of the discharged jury violated Mr. Nash's due process rights. Consequentially, Mr. Nash's conviction is affirmed and this case is remanded to the trial court to select a new jury in order to hold a new trial solely on the issue of whether Mr. Nash's conviction is his first, second, third, or fourth DUI offense based on the evidence presented regarding prior convictions.

## Background

On February 18, 2004, Dickson firefighter Patty Walsh observed Mr. Nash's vehicle being driven erratically—weaving "from guard rail to guard rail"—on Interstate 40. Ms. Walsh called her dispatcher, who alerted Dickson Police Officer Orval "Bubba" Sesler. Officer Sesler reported to the scene and observed Mr. Nash's vehicle exiting the interstate. Officer Sesler immediately turned on his blue lights and followed Mr. Nash into a gas station, where Mr. Nash began to circle the gas pumps. This predicament prompted Ms. Walsh to activate her red lights and position her vehicle so as to block Mr. Nash's vehicle, which then came to a stop.

When Mr. Nash stepped out of his vehicle, Officer Sesler observed that Mr. Nash was unsteady on his feet and smelled of alcohol. Mr. Nash was unable to perform any field sobriety tests, and Officer Sesler had to catch him at least once to prevent him from falling. This incident was captured on videotape. Officer Sesler also found an empty pint bottle of Jim Beam whiskey in the passenger seat of Mr. Nash's vehicle. After Officer Sesler arrested Mr. Nash and placed him in the patrol car, Mr. Nash fell asleep on the way to the police department.

At the police department, Judicial Commissioner Harold Sutton observed Mr. Nash "passed out" in the back of the patrol car. Although Commissioner Sutton normally administered sobriety tests, he testified that it was impossible to administer such tests under these circumstances. After viewing a videotape of the traffic stop and arrest, Commissioner Sutton instructed Officer Sesler to transport Mr. Nash to the hospital emergency room "because of his level of intoxication." At the hospital, Mr. Nash admitted to drinking "a pint of alcohol" and blood tests showed his blood alcohol content (BAC) was .249%.

Mr. Nash was charged and later indicted for the offense of driving while under the influence of an intoxicant, driving while having an alcohol concentration of greater than .10%,[1] and driving on a revoked license.

1. Tennessee Code Annotated section 55–10–401 (2004) provides as follows:

(a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, . . . while:
(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08%) or more.
Although the Tennessee General Assembly amended subsection (a)(2) of this statute to substitute "eight-hundredths of one percent (.08%)" for "ten one-hundredths of one percent (.10%)," effective and applicable to all DUI offenses occurring on or after July 1, 2003, the indictment charges Mr. Nash with driving, on February 18, 2004, "while having an alcohol concentration in his blood or

At the jury trial of this cause, the State called, among other witnesses, Commissioner Sutton to testify as a fact witness. Following cross-examination of Commissioner Sutton, Mr. Nash moved for a mistrial on the grounds that it was improper for Commissioner Sutton, as a member of the judiciary, to testify in a criminal case in which he had made the initial determination of probable cause. The trial court denied the motion.

Wanda Johnson, the physician's assistant who treated Mr. Nash in the emergency room, also testified as a medical expert. This testimony produced the following line of questioning:

> *Trial court:* [W]hen you were treating the defendant, and you got back the initial blood test, did you base your course of treatment on the blood test?
>
> *Wanda Johnson:* I did. The fact that we gave him a banana [I.V.] bag and the banana bag is only given for alcohol intoxication and not initially but somebody who you would—*the police had told me that there had been other—they said that there had been other DUI arrests in the past and that he had—that this was an ongoing problem;* and so I thought the banana bag would be appropriate.

(Emphasis added). Mr. Nash immediately asked for a jury-out hearing, in which he requested a mistrial based on the witness' reference to prior DUI arrests. The trial court denied the motion, believing that the statement was not strong enough for the jury to have been likely to register it. However, the trial court offered to give a curative instruction admonishing the jury to disregard the testimony that referred to prior DUIs. Mr. Nash declined this offer of a curative instruction in order to avoid drawing further attention to the statement.

The jury found Mr. Nash guilty of driving while under the influence of an intoxicant and of driving while having a BAC of greater than .10%, but acquitted him of driving on a revoked license.[2] The trial court entered judgment on the DUI charges. Immediately after the verdict was reported, the trial court thanked the jurors for their service and released the jury. All but one juror left the courthouse.

Within a few minutes, the parties realized that they had forgotten to conduct a hearing on the bifurcated issue of whether this was an enhanced offense. A determination by the jury that Mr. Nash's DUI was a fourth offense would elevate it from a Class A misdemeanor to a Class E felony.[3] The trial court directed the court

---

breath of ten hundredths of one percent (.10%) or greater," and the trial court, on September 22, 2006, instructed the jury that Mr. Nash was charged with "driving while having a blood alcohol concentration of .10% or greater." These errors do not affect the analysis or outcome of this case.

2. At trial, the State did not present any evidence that Mr. Nash was driving on a revoked license at the time of his arrest.

3. Tennessee Code Annotated section 55–10–403(a)(1)(A) provides for the following punishments for first and fourth DUI convictions:
 (i) Any person violating § 55–10–401 shall, upon conviction thereof, for the first offense, be fined not less than three hundred fifty dollars ($350) nor more than one thousand five hundred dollars ($1,500); the court shall prohibit the convicted person from driving a vehicle in this state for a period of one (1) year; and the person shall be further punished as provided in subsection(s).
 (ii) In addition to the other penalties set out for a first offense violation, if at the time of the offense the alcohol concentration in the person's blood or breath is twenty hundredths of one percent (.20%) or more, the minimum period of confinement for the person shall be seven (7) consecutive calendar days rather than forty-eight (48) hours.

clerk to contact the jurors to instruct them to return the following morning (a Saturday) to finish the case.

For reasons not revealed in the record, the court did not reconvene until the following Monday. Before the jury was brought into the courtroom, defense counsel moved to dismiss the enhancement case on the basis that jeopardy had attached and, upon the jury's dispersal the preceding Friday, it was likely that the jurors had discussed the case. The trial court denied this motion. The trial court questioned the jurors regarding whether anyone had talked to them about the case over the weekend or whether they had communicated with anyone about the case in any way. The trial record indicates that the jurors shook their heads to indicate that there was no such communication. The State proceeded to present evidence of Mr. Nash's prior convictions. At the conclusion of the evidence, the jury found that this was Mr. Nash's fourth DUI offense. The trial court later sentenced him to two years of incarceration as a Range I, standard offender. The Court of Criminal Appeals affirmed this sentence on appeal. *State v. Nash*, No. M2007–00792–CCA–R3–CD, 2008 WL 821527, at *8 (Tenn. Crim.App. Mar.27, 2008).

### Issues

We granted review in order to consider the following issues: (1) whether the trial court abused its discretion in determining that a trial witness' unsolicited reference to Mr. Nash's prior DUI arrests was not so prejudicial as to warrant a mistrial; (2) whether the trial court abused its discre-

tion in permitting the judicial commissioner who initially determined probable cause to testify at the trial as to Mr. Nash's condition when he arrived at the police department; and (3) whether the recall of the previously discharged jury for the enhancement portion of Mr. Nash's bifurcated trial violated his constitutional rights.

### Analysis

### Witness Statement Concerning Prior DUI Convictions

Mr. Nash asserts that Ms. Johnson's statement concerning prior DUI convictions was so prejudicial as to require a mistrial. We disagree. It is true that, in order to avoid undue prejudice, the jury should not hear evidence of a defendant's prior DUI convictions during the stage of the trial in which guilt or innocence is determined. *See Harrison v. State*, 217 Tenn. 31, 394 S.W.2d 713, 717 (1965). However, the granting of a mistrial is a matter resting within the sound discretion of the trial court and will not be reversed absent an abuse of discretion; "normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239, 250–51 (Tenn.2003); *State v. Reid*, 91 S.W.3d 247, 279 (Tenn.2002). In making the determination whether a mistrial is warranted, " 'no abstract formula should be mechanically applied and all circumstances should be taken into account.' " *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn.1993) (quoting *Jones v. State*, 218 Tenn. 378, 403 S.W.2d 750, 753 (1966)).

---

. . .
(vi) . . . the fourth or subsequent conviction shall be a Class E felony punishable by a fine of not less than three thousand dollars ($3,000) nor more than fifteen thousand dollars ($15,000); by confinement for not less than one hundred fifty (150) consecu-

tive days, to be served day for day, nor more than the maximum punishment authorized for the appropriate range of a Class E felony; and the court shall prohibit the person from driving a motor vehicle for a period of five (5) years.

■ In *State v. Smith,* 893 S.W.2d 908 (Tenn.1994), this Court considered a similar inappropriate, unsolicited statement of a witness, and concluded that a mistrial was not warranted. The *Smith* Court examined the following three nonexclusive factors in determining whether a mistrial was warranted because of inappropriate testimony presented to the jury: (1) whether the State elicited the testimony, or whether it was unsolicited and unresponsive; (2) whether the trial court offered and gave a curative jury instruction; and (3) the relative strength or weakness of the State's proof. In *Smith,* the defendant's sister, in response to a question about the length of time in which the defendant had been living at her house, referred to the fact that the defendant had served prior time in jail. *Id.* at 923. This Court, observing that such a statement was "unresponsive and unsolicited," that the trial court gave a curative jury instruction, and that there was "overwhelming proof of Defendant's guilt," concluded that the improper statement did not warrant a mistrial.[4] *Id.; see also State v. Taylor,* No. W2002–00183–CCA–R3–CD, 2003 WL 402276, at *4 (Tenn.Crim.App. Feb.14, 2003); *State v. Dotson,* No. 03C01–9803–CC–00105, 1999 WL 357327, at *4 (Tenn. Crim.App. June 4, 1999) (citing a number of Tennessee cases to support the court's conclusion that these three factors are "often considered" to determine whether a mistrial should be granted because of inappropriate testimony).

■ Applying these factors as referenced in *Smith,* we first note that the State did not elicit the inappropriate testimony from the witness. Based on the trial court's question concerning the medical treatment given to Mr. Nash on the night of his arrest, there was no reason to expect that Ms. Johnson, who had no prior contact with Mr. Nash, would respond with a comment concerning his earlier DUI arrests. Mr. Nash's counsel admitted that the reference "wasn't anyone's fault." The Court of Criminal Appeals correctly noted that this was a "spontaneous statement" that was made during "unrelated questioning by the trial court." *Nash,* 2008 WL 821527, at *4.

Secondly, the trial court's offering of a curative jury instruction, and Mr. Nash's refusal of the curative instruction for tactical reasons, is significant to the analysis. *Smith,* 893 S.W.2d at 923; *see also State v. Davis,* No. 01C01–9803–CC–00138, 1999 WL 5436, at *2 (Tenn.Crim.App. Jan.7, 1999) (holding that testimony referring to past crimes did not warrant a mistrial when the defendant declined the curative instruction and the error was "harmless in light of the overwhelming evidence" against the defendant); *State v. Bogle,* No. 86–258–III, 1987 WL 15193, at *6 (Tenn. Crim.App. Aug.7, 1987) (holding that a witness statement that implied that the defendant had been arrested on previous occasions should not result in a mistrial when the prosecutor did not seek to elicit evidence of past crimes, the testimony was only weakly suggestive of an arrest record, and the trial court offered a curative instruction that was declined). The trial court correctly offered to cure any undue prejudice that might have occurred resulting from Ms. Johnson's unresponsive statement, and Mr. Nash declined to take

---

4. This nonexclusive list of factors offers nonmandatory guidance in the determination of whether to grant a mistrial. This Court has long held that no abstract formula should be mechanically applied to determine the propriety of a mistrial. *See State v. Dellinger,* 79 S.W.3d 458, 494 (Tenn.2002); *Mounce,* 859 S.W.2d at 322; *Jones,* 403 S.W.2d at 753. In light of this precedent, we note that these three factors, while often helpful, may not be applicable in every instance.

advantage of the trial court's attempt to nullify the harmful effect of the testimony. Tennessee Rule of Appellate Procedure 36(a) provides that "[n]othing in this rule shall be construed as requiring relief be granted to a party ... who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Mr. Nash certainly cannot now be heard to complain of the lack of a curative jury instruction when he declined such an instruction at trial.

Thirdly, the record indicates that the State's proof against Mr. Nash was overwhelmingly strong, including his BAC level of .249%, the observations of a witness who saw Mr. Nash weave his vehicle "from guard rail to guard rail" on the interstate, the videotape of the arrest, the empty pint bottle of whiskey in Mr. Nash's vehicle, and witness testimony that Mr. Nash had admitted to drinking "a pint of alcohol." It is thus highly unlikely that Ms. Johnson's statement concerning prior offenses altered the outcome of the trial. In light of the overwhelming amount of evidence against Mr. Nash, the trial court did not abuse its discretion in refusing to grant a mistrial after testimony that, while admittedly inappropriate, was spontaneous and harmless.

In his brief, Mr. Nash cites *State v. Wyrick*, No. 1321, 1991 WL 87246 (Tenn. Crim.App. May 28, 1991), for the proposition that the inappropriate testimony should result in a mistrial. However, his reliance on this case is misplaced. In *Wyrick*, the defendant stated on direct examination that he had previously been caught driving drunk, thus opening the door for the prosecution to clarify this fact during cross-examination. *Id.* at *2, 4. However,

error occurred when the cross-examining prosecutor, over several objections, proceeded to air the details of all of the defendant's prior DUI convictions. *Id.* at *4–5. Thus, *Wyrick* involved much more than a single, spontaneous statement by a witness. Furthermore, unlike in *Wyrick*, in the present case the trial court offered to give the jury a curative instruction. *Wyrick* is thus distinguishable and does not support the conclusion that a mistrial was necessary in the case at hand.

### Testimony of the Judicial Commissioner

■ Mr. Nash, relying on Tennessee Supreme Court Rule 10, Canon 3 of the Code of Judicial Conduct, argues that it was prejudicial error to permit the judicial commissioner who initially determined probable cause to testify at the trial as to Mr. Nash's condition when he arrived at the police department. We disagree. Under Tennessee Rule of Evidence 601, "[e]very person is presumed competent to be a witness except as otherwise provided in these rules or by statute." The question of witness competency is a matter for the trial court's discretion, and the trial court's decision will not be overturned absent abuse of that discretion. *State v. Caughron*, 855 S.W.2d 526, 538 (Tenn.1993).

■ Mr. Nash cites Canon 3 for the proposition that it was prejudicial error for Judicial Commissioner Sutton to testify at his trial. However, Canon 3 makes no direct reference to this situation. In pertinent part, Canon 3 provides that "A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently." [5] The Tennessee Rules of Evidence only expressly prohibit a judge from testifying at a trial

---

5. Tennessee Supreme Court Rule 10 explains that "[a]nyone, whether or not a lawyer, who is an officer of a judicial system and who performs judicial functions, including an officer such as a magistrate, court commissioner, judicial commissioner, ... or any other referee performing judicial functions, is a judge within the meaning of this Code."

in which he or she is presiding. *See* Tenn. R. Evid. 605 (with respect to the "Competency of Judge as Witness," stating that "[t]he judge or chancellor *presiding* at the trial may not testify in that trial") (emphasis added). The Advisory Commission Comments refer to Canon 3 in explanation of Rule 605, but neither the commentary nor the text of Rule 605 supports a defendant's contention of impropriety under Canon 3 in the context of the testimony of a judge who is not presiding over the proceeding.

We note that judicial testimony potentially implicates Tennessee Supreme Court Rule 10, Canon 1, which addresses the integrity and independence of the judiciary, and Canon 2, which addresses the appearance of judicial impropriety. Canon 1 requires a judge to "establish[ ], maintain[ ], and enforc[e] high standards of conduct ... so that the integrity and independence of the judiciary will be preserved." Canon 2 provides that "[a] judge ... shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," specifically mandating that "[a] judge shall not testify voluntarily as a character witness." Tenn. Sup.Ct. R. 10, Canon 2B. The commentary to Canon 2B makes it clear, however, that a judge is not per se disqualified from testifying as a witness in a case over which the judge is not presiding, noting that "[a] judge, may, however, testify when properly summoned." In the present case, Commissioner Sutton was not called upon to testify as a character witness, and therefore Canon 2B does not require his disqualification as a witness.

Tennessee appellate courts have had few occasions to address the propriety of judicial testimony. Courts in other jurisdictions, when presented with similar issues, have expressed concerns that judicial testimony could potentially undermine judicial independence and create an appearance of impropriety. *See, e.g., Phillips v. Clancy,* 152 Ariz. 415, 733 P.2d 300, 302, 305–06 (Ariz.Ct.App.1986) (declining to consider an affidavit from an administrative law judge in part because such evidence would create an appearance of impropriety in violation of the applicable state code of judicial conduct); *Merritt v. Reserve Ins. Co.,* 34 Cal.App.3d 858, 110 Cal.Rptr. 511, 528 (1973) (holding that it was "prejudicial to one party for a judge to testify as an expert witness ... with respect to matters that took place before him in his judicial capacity" because "the judge appears to be throwing the weight of his position and authority behind one of two opposing litigants"); *Hatcher v. McBride,* 221 W.Va. 5, 650 S.E.2d 104, 108–09 (2006) (concluding that a judge may not voluntarily testify as a character witness but may testify pursuant to a summons because a judge has a duty to "respect and comply with the law" under Canon 2A of the Code of Judicial Conduct); *Helmbrecht v. St. Paul Ins. Co.,* 117 Wis.2d 74, 343 N.W.2d 132, 135 (Wis. Ct.App.1983) (where a judge testified as an expert witness on the alleged malpractice of an attorney who had practiced in the judge's court, stating that one of the main reasons to disallow a judge to testify as an expert witness is that "[j]udges are supposed to be impartial, and it is our experience that expert witnesses are often advocates and frequently do not appear impartial"), *rev'd on other grounds,* 122 Wis.2d 94, 362 N.W.2d 118, 133 (1985); *see also* Timothy E. Travers, Annotation, *Judge as Witness in Cause Not on Trial Before Him,* 86 A.L.R.3d 633 (1978). Similarly, courts have been disturbed by the possibility that juries would view judges as "super witnesses," which would allow testifying judges to inadvertently exert undue influence over the proceedings. *See, e.g., People v. Drake,* 841 P.2d 364, 368 (Colo. Ct.App.1992) (expressing concern about

"the weight to which a jury might accord [judicial testimony]"); *Helmbrecht,* 343 N.W.2d at 135 (noting "the danger that the jury would give [a judge's] testimony undue weight").

In light of these valid concerns, judicial testimony should be used with restraint and caution. While we do not expressly approve of the State's use of the judicial commissioner as a fact witness in the present case, neither the Rules of Evidence nor the Code of Judicial Conduct requires his disqualification under these circumstances, and we do not find that the trial court abused its discretion in allowing Commissioner Sutton's testimony based on the facts of this case.

### Jury Recall in the Bifurcated Trial

Finally, Mr. Nash argues that permitting the discharged jury to be recalled for the enhancement portion of his bifurcated trial violated his protection against double jeopardy. The State concedes that there may be a valid jury separation issue, but argues that reconvening the jury did not implicate the policies behind the double jeopardy clause. We agree with the State that double jeopardy is not implicated, but conclude that the discharged jury could not be reassembled to address the enhancement issue without violating Mr. Nash's due process rights because the jury left the presence and control of the trial court.

Both the federal and state constitutions prohibit placing a person in jeopardy twice for the same offense. U.S. Const. amend. V, cl. 2; Tenn. Const. art. I, § 10. These provisions provide three separate guarantees: (1) that an accused will not be subject to a second prosecution for the same offense after acquittal; (2) that an accused will not be subject to a second prosecution for the same offense after conviction; and (3) that an accused will not receive multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794, 803, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *State v. Denton,* 938 S.W.2d 373, 378 (Tenn. 1996). Underlying these guarantees is the deeply rooted principle that

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*State v. Harris,* 919 S.W.2d 323, 327 (Tenn. 1996) (quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). This protection from multiple prosecutions encompasses the defendant's " 'right to have his trial completed before a particular tribunal.' " *Oregon v. Kennedy,* 456 U.S. 667, 671–72, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)); *State v. Smith,* 871 S.W.2d 667, 671 (Tenn.1994). This latter right incorporates the concern that an accused should not be harassed, and that the prosecution should not be afforded another opportunity to convict the defendant under a more favorable panel. The double jeopardy clause does not, however, necessarily guarantee that the government will reach its goal of enforcing the criminal laws in one proceeding. *Kennedy,* 456 U.S. at 672, 102 S.Ct. 2083; *Smith,* 871 S.W.2d at 671.

When a defendant is charged with a second or subsequent DUI offense, the trial of that offense is required to be a bifurcated proceeding. *State v. Sanders,*

735 S.W.2d 856, 858 (Tenn.Crim.App.1987). It is only after the conclusion of the first phase—the guilt phase—that the jury addresses the issue of whether the conviction qualifies as a repeat offense for purposes of punishment. *Cf. State v. Robinson,* 29 S.W.3d 476, 482 (Tenn.2000) (citing *Harrison v. State,* 217 Tenn. 31, 394 S.W.2d 713, 717 (1965)); *State v. Ward,* 810 S.W.2d 158, 159 (Tenn.Crim.App.1991); *Sanders,* 735 S.W.2d at 858. The issue of whether a DUI constitutes a subsequent offense does not involve a separate "charge." Instead, it simply affects the length of the available sentence. Tenn.Code Ann. § 55–10–403(a)(1)(A)(iii) (2004) ("This section constitutes an enhanced sentence, not a new offense."); *Ward,* 810 S.W.2d at 159. Of course, as in this case, in the event a defendant is charged with and convicted of a fourth or greater offense, there is the additional consequence that the offense is elevated from a misdemeanor to a felony. *See* Tenn.Code Ann. § 55–10–403(a)(1)(A)(vi) (2004). Because the jury was not reassembled to determine guilt or innocence, but only to determine the facts relevant to sentencing, there was no separate "jeopardy."

It is settled that two-stage proceedings, such as those provided for in capital cases and DUI cases, do not pose a double jeopardy problem. *Cf. State v. Carter,* 988 S.W.2d 145, 153 (Tenn.1999) (finding error in the sentencing phase of a capital case and permitting retrial on only the penalty phase); *Ward,* 810 S.W.2d at 159 (permitting a retrial solely on the enhancement count of an indictment that charged second-offense DUI after a jury convicted the defendant of DUI but failed to reach a verdict on the enhancement count); *see also State v. Johnson,* 762 S.W.2d 110, 118

(Tenn.1988) (recognizing that "'the sentencing phase of the trial is concerned only with the punishment and does not in any sense constitute a second trial for the same offense or create a separate and additional offense'") (quoting *State v. Austin,* 618 S.W.2d 738, 742 (Tenn.1981)).

 Nevertheless, we hold that the discharge and reconvening of the jury in this case implicates fair trial and due process concerns. *See* U.S. Const. amend. V, amend. XIV, § 1; Tenn. Const. art. I, §§ 6, 8, 9. Few Tennessee cases address the situation in which a jury is discharged and later recalled to take further action.[6] In *Clark v. State,* 170 Tenn. 494, 97 S.W.2d 644 (1936), the trial court discharged the jury under the mistaken belief that it was irreconcilably deadlocked as to the guilt or innocence of four joint defendants. In truth, the jury had voted "not guilty" as to defendant Clark. *Id.* at 645. Clark, having learned of these circumstances through discussions with several of the discharged jurors, moved to reassemble the jury for the purpose of accepting an erroneously withheld not guilty verdict. *Id.* The trial court denied the motion. This Court emphasized the danger that arises when a jury is reconvened:

> An invariably followed rule, supported not only by precedent, but the soundest reason, grounded on universal knowledge of human nature, is the rule that after the discharge of a jury in a felony case and the separation of the jurors to such a degree that outside contacts may have been even momentarily had, the members of that jury may not be reconvened *for the taking of any action whatever* involving the fate of the accused.

---

6. For an exhaustive discussion of criminal cases in which the question of jury recall after discharge was raised, see David J. Marchitelli, Annotation, *Criminal Law: Propriety of Reas-* *sembling Jury to Amend, Correct, Clarify, or Otherwise Change Verdict After Jury Has Been Discharged, or Has Reached or Sealed Its Verdict and Separated,* 14 A.L.R.5th 89 (1993).

*Id.* at 646 (emphasis added). In declining to adopt a rule that would allow the separation of a jury in a felony case to be curable upon the consent of the accused, this Court reasoned that such a rule would be troublesome because it would have to be made available to both the accused and the prosecution. *Id.* Thus, there would be little justification in denying a prosecutor's petition to reassemble a jury for the purpose of reporting a guilty verdict. *Id.* Furthermore, in response to defendant Clark's argument that the jurors were only separated for a short time and that all of the jurors had not left the building, the Court emphasized that flexibility in considerations such as the time of separation or the location of the jurors was incompatible with enforcement of the rule against jury recall. *Id.* Upon discharge, all outsiders are free to approach and confer with members of the jury, and thus jurors pass from their status as jurors and are "powerless to resume it," while the court is "powerless to reinstate them in it." *Id.*

More recently, in *State v. Green*, the Court of Criminal Appeals addressed a situation in which a jury was discharged after reporting a verdict of "not guilty" on the charged offenses. *See* 995 S.W.2d 591, 606 (Tenn.Crim.App.1998). Before discharge, however, the trial court did not inquire as to whether the jury had convicted on any lesser offenses. *Id.* at 607. Green was indicted on facilitation of first degree murder and facilitation of attempted first degree murder. *Id.* at 606–07. The jury was sequestered during trial. *Id.* at 607. Upon conclusion of the proof, the trial court charged the jury to deliberate on two counts: facilitation of first degree murder and facilitation of second degree murder on count one, and facilitation of attempted first degree murder, facilitation of attempted second degree murder, and facilitation of attempted aggravated assault on count two. The jury deliberated over a period of two days before returning to court and reporting that they had reached a verdict. The trial court orally inquired as to the jury's verdict on count one and count two. The jury foreman, who did not realize that the report of the verdict should include the jury's conclusions with respect to both the indicted offenses and any lesser offenses that the jury had considered, reported that the verdict on both of these counts was "not guilty." *Id.* Instead of asking whether the jury had reached a verdict on any of the lesser charged offenses, the trial court discharged the jury. *Id.* Accompanied by court officers, the jury exited the courtroom into a congested area occupied by the general public and the media. During the exit from the courtroom, one of the jurors indicated to the prosecutor that something was wrong. Upon the request of the prosecutor, the jury was recalled into the courtroom where the trial court ascertained that, although acquitting Green of the primary charged offenses, the jury had found her guilty of the lesser included offenses of facilitation of second degree murder and facilitation of attempted second degree murder. *Id.* at 608. Accordingly, the trial court entered the jury verdict as to those lesser included offenses. *Id.* The defendant appealed. The Court of Criminal Appeals held that, even though jurors were accompanied by court officers who reported that jurors were not subject to outside influence, and even though less than two minutes had elapsed between initial dismissal and the reassembly of the jury, there was still the possibility of outside contact or influence. *Id.* at 613. The court concluded that the jury was discharged and could not be reassembled to amend or correct their verdicts of not guilty. *Id.* The court reasoned that a verdict reported by the jury, when coupled with the discharge of that jury, con-

cludes a defendant's jeopardy. *Id.* at 614. Furthermore, the court noted that the recall of the jury violated the defendant's due process rights. *Id.*

 In conclusion, we reaffirm what the *Clark* Court stated long ago: once a jury has returned a complete verdict, or the jurors have separated and passed from the control of the court, the jury cannot be reassembled to act on the case for any purpose. *See* 97 S.W.2d at 646. This rule was meant to protect the fundamental guaranty of a fair trial by requiring that jurors remain shielded from improper influences, which can only be accomplished so long as they are under the control of the court or have been properly admonished not to discuss the case. In a bifurcated trial, a jury is not discharged, nor does it pass beyond the trial court's control at the conclusion of the guilt phase of the trial, so long as the jury has been properly admonished not to discuss or read anything about the case and instructed that the jurors remain as jurors until the completion of all stages of the trial. In this case, however, the jury was discharged as if it had completed its duties, and there was no such admonishment. Accordingly, the danger of outside influence was such that it could not be recalled. We conclude that the appropriate remedy is to remand this case to the trial court for the selection of a new jury and a new trial solely on the issue of whether Mr. Nash's conviction is his first, second, third, or fourth DUI offense. The new jury shall also assess the mandatory fine in this case, as the previous jury did not do so. *See* Tenn.Code Ann. § 55–10–403(a)(1)(A)(vi) (2004).

### Conclusion

For the foregoing reasons, we affirm the holding of the Court of Criminal Appeals

that the trial court did not abuse its discretion in refusing to grant a mistrial because of inappropriate witness testimony concerning prior DUI offenses. We hold that the trial court did not abuse its discretion in allowing the judicial commissioner to testify as a fact witness under the circumstances presented here. Finally, because Mr. Nash's due process rights were violated by the reconvening of the jury after discharge and release, we remand the case to the trial court to select a new jury in order to determine whether Mr. Nash's conviction is his first, second, third, or fourth DUI offense based on the evidence presented regarding prior convictions, and to assess the appropriate statutory fine. Costs on appeal are assessed one-half to the appellant, Scott Houston Nash, and one-half to the appellee, State of Tennessee.