IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2016

**STATE OF TENNESSEE v. KENNETH A. JONES**

**Appeal from the Criminal Court for Davidson County**
**No. 2012-A-869      Mark J. Fishburn, Judge**

_____

**No. M2015-02045-CCA-R3-CD – Filed September 12, 2016**

_____


Defendant, Kenneth A. Jones, was convicted of one count of robbery and sentenced to fifteen years. On appeal, Defendant argues that the trial court erred by failing to grant a mistrial after a State's witness made reference to other crimes of which Defendant was suspected. Upon our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Jesse Lords (on appeal and at trial) and Nathan Cate (at trial), Nashville, Tennessee, for the appellant, Kenneth A. Jones.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn R. Funk, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

*Factual and Procedural Background*

In March 2012, Defendant was indicted by the Davidson County Grand Jury for a single count of aggravated robbery. As pertinent to this appeal, Defendant filed a motion in limine on June 16, 2015, moving the trial court to prohibit the State from making any statement or implication at trial regarding other charges Defendant was facing. The case proceeded to trial on July 13, 2015.

The victim, Srikanth Appogigudam, testified that in November of 2011, he lived in an apartment complex in Antioch, Tennessee. On November 6, 2011, he gathered his laundry and drove to the complex's laundry facility. The victim drove a Toyota Corolla that he had recently purchased for $4000. While the victim was inside the laundry facility unloading his clothes, a man came in the door, pulled out a gun, and told the victim to "turn back." The victim told the man to "take whatever you want, just leave me." The man reached into the victim's pocket and took a Blackberry cell phone, keys, and a couple of quarters. After the man left, the victim ran back to his apartment to call the police. He noticed when he exited the laundry facility that his car was gone. The victim testified that in addition to the car's title, the car contained a Garmin global positioning system (GPS) unit that he used to navigate around Nashville and that had his home address stored in it.

The victim described the perpetrator as a black man wearing jeans. The victim testified that he saw the perpetrator's face for "a couple of seconds" and that the whole incident lasted "maybe [thirty] seconds to one minute." The victim could not recall what kind of shirt the man was wearing, what kind of hairstyle he had, or whether he had glasses or facial hair. At trial, the victim could not identify anyone in the courtroom. However, when he had been shown a photographic lineup fifteen days after the incident, the victim was able to identify Defendant as the person who robbed him. The victim testified that he was "eighty percent" certain that the person he picked out of the lineup was the person who robbed him. The victim was also able to identify Defendant at the preliminary hearing conducted one month after the robbery.

Detective William Traughber of the Metropolitan Nashville Police Department testified that on the morning of November 21, 2011, he found Defendant in a parking lot of an apartment complex driving a black Pontiac Grand Am. Detective Traughber removed Defendant from the vehicle and patted him down. Detective Traughber found a single key with a Toyota emblem on it. When asked about the key, Defendant stated that it belonged to his girlfriend and that the car was broken down. When police spoke to Defendant's girlfriend, she denied that the car belonged to her. Detective Traughber testified that the key fit a Toyota Corolla in the same parking lot. The tag on the Toyota came back registered to a stolen 2006 Nissan Altima, and the vehicle identification number came back as the vehicle stolen from the victim on November 6, 2011. Inside the Pontiac that Defendant had been driving, police recovered a Garmin GPS unit. An officer turned on the unit and pressed the home button, which showed the victim's address.

Detective William Stewart obtained consent from the victim to search the Toyota after it was recovered. He also prepared a photographic lineup to show to the victim. The victim identified Defendant's picture and wrote on the form "Number four looks like the person who robbed me. I saw his face when he came in the laundry room."

Teneal Morris testified on behalf of Defendant, who is the father of her cousin's child. Ms. Morris testified that on November 6, 2011, Defendant and several other people were helping her move into her new home. She testified that they were there throughout the day, helping her pack a few boxes at her old apartment and helping her unpack and move furniture at the new house. Ms. Morris recalled that they were there until the evening because she ordered pizza for everyone. Ms. Morris said that Defendant was with her until around 10:00 that night. The State questioned why Ms. Morris did not speak to their investigator or come forward with her alibi testimony until trial over three years later.

The jury found Defendant guilty of the lesser-included offense of robbery. The trial court sentenced Defendant to serve fifteen years as a career offender. Defendant filed a motion for new trial, which was denied by the trial court. Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant raises the single issue of whether the trial court should have granted a mistrial after one of the State's witnesses referred to other crimes of which Defendant was suspected. Throughout his appellate brief, Defendant makes several references to sufficiency of the evidence, including a discussion of the standard of review, but he does not include it as a stand-alone issue. *See* Tenn. R. App. P. 27(a) (stating that an appellant's brief must include "[a] statement of the issues presented for review" as well as an argument setting forth "the contentions of the appellant with respect to the issues presented"). We note that one of the factors to be considered in determining the propriety of a trial court's ruling on a motion for mistrial is the overall strength or weakness of the State's case. *See State v. Nash*, 294 S.W.3d 541, 547 (Tenn. 2009). We could treat Defendant's references to sufficiency of the evidence as merely addressing this factor, thereby waiving it as a stand-alone issue. *See* Tenn. Crim. App. R. 10(b). However, because this is the direct appeal and Defendant's only opportunity to challenge the sufficiency of the evidence, we shall address the sufficiency issue on the merits in the interest of justice.

*I. Sufficiency of the Evidence*

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence

introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

A criminal offense may be established entirely by circumstantial evidence. *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010). "Circumstantial evidence is intrinsically no different from testimonial evidence." *Dorantes*, 331 S.W.3d at 380 (quoting *Holland v. United States*, 348 U.S. 121, 139-40 (1954)). It is for the jury to determine the weight to be given the circumstantial evidence, the inferences to be drawn from the evidence, and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. *State v. James*, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. *See Dorantes*, 331 S.W.3d at 380-81 (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

Furthermore, questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). This is because the jury has "the benefit of hearing witness testimony and observing witness demeanor." *State v. Robinson*, 400 S.W.3d 529, 533 (Tenn. 2013). As the Tennessee Supreme Court explained almost half a century ago:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). Therefore, "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the

evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.*; *Dorantes*, 331 S.W.3d at 379.

Robbery is defined as the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103.

On appeal, Defendant argues that his identity as the perpetrator was not adequately established because the victim could not identify him at trial and was only "eighty percent" certain that the person he selected from the photographic lineup was the person who robbed him. "The identity of the perpetrator is an essential element of any crime." *State v. Robert Wayne Pryor*, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App. Apr. 19, 2005) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)), *no perm. app. filed*. The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." *Id.* (citing *State v. Sneed*, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995)). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). "[T]he testimony of a victim, by itself, is sufficient to support a conviction." *Id.* (citing *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)); *State v. Joshua Smith*, No. W2012-01059-CCA-R3-CD, 2013 WL 6095831, at *8 (Tenn. Crim. App. Nov. 19, 2013), *perm. app. denied* (Tenn. Mar. 17, 2014).

At trial, the victim was honest that he could not recall the person who robbed him over three years prior. The jury heard the victim's description of the robber and the fact that the victim was able to make an identification from a photographic lineup only fifteen days after the robbery. The victim testified that he was "eighty percent" certain that the person he selected from the photographic lineup was the person who robbed him. The victim selected Defendant's photograph and denied knowing who he was prior to this incident.The victim also was able to identify Defendant at the preliminary hearing one month after the robbery. By its verdict, the jury clearly chose to accredit this testimony over the alibi testimony of Ms. Morris. Additionally, Defendant was found in possession of the victim's car key and GPS unit. As this Court has previously stated, "[p]ossession of recently stolen goods gives rise to an inference that the possessor has stolen them." *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995) (citing *Bush v. State*, 541 S.W.2d 391, 394 (Tenn. 1976)). The evidence in this case, as determined by the jury as the trier of fact, was sufficient to sustain Defendant's conviction for robbery.

## II. Motion for Mistrial

Defendant's primary argument on appeal is that the trial court erred by failing to grant a mistrial after a witness referred to other crimes of which Defendant was suspected. Defendant argues that the reference to other crimes was inadmissible and that the trial court's instruction to the jury was not properly curative. The State responds that the trial court gave a proper curative instruction and did not abuse its discretion in denying the motion for mistrial.

The decision whether to grant a mistrial due to inadmissible testimony from a witness is a matter resting in the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *Nash*, 294 S.W.3d at 546. "'[N]ormally, a mistrial should be declared only if there is a manifest necessity for such action.'" *Id.* (quoting *State v. Saylor*, 117 S.W.3d 239, 250-51 (Tenn. 2003)). A manifest necessity exists when something has occurred that would prevent an impartial verdict, thereby resulting in a miscarriage of justice if a mistrial were not declared, *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000), and there is "no feasible alternative to halting the proceedings." *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981). The burden is on the party seeking the mistrial to show that a manifest necessity exists. *Land*, 34 S.W.3d at 527. Even though "'no abstract formula should be mechanically applied and all circumstances should be taken into account,'" *Nash*, 294 S.W.3d at 546 (quoting *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993)), the Tennessee Supreme Court has identified three nonexclusive factors for determining whether a mistrial was warranted because of inappropriate testimony presented to the jury: "(1) whether the State elicited the testimony, or whether it was unsolicited and unresponsive; (2) whether the trial court offered and gave a curative jury instruction; and (3) the relative strength or weakness of the State's proof," *id.* at 547 (citing *State v. Smith*, 893 S.W.2d 908, 923 (Tenn. 1994)).

Detective Traughber testified that when he stopped Defendant and patted him down, he found a Toyota key in Defendant's pocket. Defendant had been driving a Pontiac and stated that the key belonged to his girlfriend's car which was broken down. The State asked Detective Traughber whether he asked Defendant's girlfriend about the Toyota key and what he did based on her response. Detective Traughber responded, "Well, one of the crimes that Mr. Jones was suspected of involved a Toyota." Defense counsel immediately objected and asked for a mistrial. The State, having warned the witness prior to his testimony not to refer to any other crimes involving Defendant, responded that the detective was simply referring to the Toyota stolen from the victim in the present case. Defense counsel was concerned that the detective's use of the word "crimes" indicated that Defendant was suspected of and being investigated for other crimes. The trial court denied the motion for mistrial and gave the following curative instruction to the jury:

Members of the jury, you may have heard reference made by the detective about possible suspicions they had of Mr. Jones that they were investigating[.] I instruct you and charge you at this point in time that if there was any other suspicions that the police officers had as it related to Mr. Jones, you're to ignore it and not pay any attention to it. Whatever their investigation involved and whatever it revealed, he is only on trial and indicted with one charge, so don't go back there and speculate or think about I wonder what else they must have thought he had done and what suspicions they had[.] [I]t's irrelevant to the trial of this case. The only information relevant to the trial in this case is the evidence that their investigation got in regards to this case. He has not been indicted and there's nothing before you in this indictment involving whatever other suspicions they may have had, so just do not pay that reference [which] may have been made any attention whatsoever, and just focus on whatever their investigation may have revealed as it relates to this case for which he did g[e]t indicted, which is the only case before you.

Evidence of prior crimes, wrongs, or bad acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tenn. R. Evid. 404(b). In this case, the State did not directly elicit the testimony with regard to other "crimes that [Defendant] was suspected of" from the detective. The State was simply asking what course of conduct the detective took after discovering the Toyota key in Defendant's pocket. The detective's response was unsolicited and unresponsive to the question asked. Additionally, the trial court gave a curative instruction to the jury, telling the jury to "to ignore it and not pay any attention to it." The jury is presumed to obey the instructions of the trial court. *See State v. Banks*, 271 S.W.3d 90, 134 (Tenn. 2008). On appeal, Defendant argues that the instruction given by the trial court was inadequate because "it d[id] not instruct the jury to eliminate the possibility of suspicion of other crimes . . . [or] to wipe the testimony from their mind as though the testimony never occurred." However, after the trial court gave its instruction, Defendant did not raise any further objections to it. As this Court has previously explained, if a party is "dissatisfied with the [curative] instruction given and does not request a more complete instruction, the party effectively waives the issue for appellate purposes." *State v. Karen E. Carpenter*, No. E2010-02391-CCA-R3-CD, 2011 WL 4346655, at *4 (Tenn. Crim. App. Sept. 19, 2011) (quoting *State v. Griffis*, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997)), *perm. app. denied* (Tenn. Dec. 14, 2011); *see also* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Finally, as discussed above, the State's case against Defendant was strong, including Defendant's possession of the recently stolen items and a positive identification by the victim. Defendant has failed to show that there was a manifest necessity for a mistrial or that the trial court abused its discretion in failing to grant one.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE