IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 19, 2024

**STATE OF TENNESSEE v. BOBBY JOE WADDLE**

**Appeal from the Criminal Court for Washington County**
**No. 22-CR-47819    Stacy L. Street, Judge**

_____

**No. E2024-00132-CCA-R3-CD**

_____

The Defendant, Bobby Joe Waddle, was convicted in the Washington County Criminal Court of unlawful possession of a firearm after having been convicted of a felony crime of violence and was sentenced as a Range III, career offender to thirty years in confinement. On appeal, the Defendant contends that the evidence is insufficient to support his conviction and that the trial court erred by refusing to bifurcate his trial. Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TOM GREENHOLTZ, J., joined.

Grace E. Studer (on appeal), Johnson City, Tennessee, and Francis X. Santore, Jr. (at trial), Greeneville, Tennessee, for the appellant, Bobby Joe Waddle.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Ken Baldwin, District Attorney General; and Lawrence Scott Shults and Fred M. Lance, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In January 2022, the Washington County Grand Jury indicted the Defendant for unlawful possession of a firearm with the intent to go armed after having been convicted of a felony crime of violence. The State subsequently amended the indictment by omitting the phrase "with the intent to go armed." The Defendant went to trial on August 1, 2023.

At trial, Ed Joseph Berberich, Jr., testified that in November 2021, he lived next door to the Defendant's family in Washington County. On the morning of November 23, Mr. Berberich looked out his window and saw the Defendant "kind of standing down from [the Defendant's] driveway with a couple of butcher knives doing, like, a Tai chi type thing, hacking at stuff." Mr. Berberich used his cellular telephone to record the Defendant. He said the video showed the Defendant "swinging the knives around," and the State played the video for the jury. The Defendant's behavior "wasn't normal" and scared Mr. Berberich's wife, so Mr. Berberich telephoned 911.

On cross-examination, Mr. Berberich acknowledged that the Defendant appeared to be having a conversation with a tree. Mr. Berberich said that he had lived next door to the Defendant for seven years and acknowledged that the Defendant had exhibited "bizarre" behavior on previous occasions. Although the Defendant sometimes acted "a little bizarre," Mr. Berberich "could have a conversation with him periodically."

Deputy Austin Lyons of the Washington County Sheriff's Office testified that on the morning of November 23, 2021, he responded to a "911 call of a suspicious person wielding knives." He arrived at the Waddle home five to six minutes later and saw the Defendant "swinging around knives erratically in a bizarre manner." Deputy Lyons knew the Defendant and the Defendant's family. He got out of his patrol car, walked toward the Defendant, and told the Defendant to drop the knives. Deputy Lyons pointed his gun at the Defendant, and the Defendant dropped the knives as instructed. Deputy Lyons told the Defendant, "'Come here.'" As the Defendant was walking toward the officer, the Defendant put his hand into his pocket. Deputy Lyons told the Defendant to take his hand out of his pocket and grabbed the Defendant's wrist. The Defendant took his hand out of his pocket and was holding a gun.

Deputy Lyons testified that the gun was a thirty-two-caliber Davis firearm. He described the gun as a "derringer type pistol" with more than one barrel, and he identified photographs of the gun. The photographs showed a small, black handgun with two barrels, one on top of the other. Deputy Lyons said that the gun was loaded with one round and that an indention in the center of the round's primer meant that the firing pin had struck the primer. Deputy Lyons explained that in order for the firing pin to have struck the primer, the trigger of the gun had been pulled or the gun had been "dropped in . . . some way."

Deputy Lyons testified that he took the gun from the Defendant and arrested him. The Defendant continued acting erratic but "calmed down" after Deputy Lyons put him into the back of the patrol car. Deputy Lyons did not have to restrain the Defendant, and the Defendant was "compliant for the most part." Deputy Lyons told the Defendant that he knew the Defendant was a convicted felon and that the Defendant was not allowed to have a firearm. At that point, the State showed Deputy Lyons a document, and he identified

it as a judgment of conviction for the Defendant's prior conviction of aggravated burglary. Deputy Lyons acknowledged that aggravated burglary was a violent felony, and the State introduced the judgment of conviction into evidence.

Deputy Lyons testified that he transported the Defendant to the criminal justice center. He then identified four telephone calls made by the Defendant while the Defendant was in jail, and the State played the calls for the jury. The Defendant made the first call from the booking area at 9:13 a.m. on the day of his arrest. During the call, the Defendant told his father that he was in jail because he had "[indecipherable name's] little black thing" and that he needed "[indecipherable name] to call up here and tell them that it belonged to him." The Defendant's father asked, "A gun?" The Defendant answered, "Yeah, . . . the little black one." The Defendant made the second call on November 28, 2021. During the call, the Defendant begged his parents to bond him out of jail. His father asked, "You gonna get out and get you another pistol?" The Defendant said, "No, I won't do that. I'm going to try to do right if you'll help me." The Defendant made the third call on July 20, 2023. During that call, the Defendant told his father, "They didn't get the gun off me until I got to the foot of the hill . . . . I didn't pull it out until I was down to the bottom of the hill where I knew they wouldn't shoot me." The Defendant made the fourth call about twenty minutes later. During the call, the Defendant's father warned him that the call was being recorded and that the call could be used against him in court. The Defendant responded, "I know it. . . . They can take [the recording to court] if they want to 'cause there ain't nothing said on it that ain't the truth as far as I'm concerned. Nobody could see the gun. . . . I only done what the officer told me to. He said bring it to him."

On cross-examination, Deputy Lyons testified that he arrived at the Waddle home about 8:50 a.m. and that he saw only the Defendant. At first, Deputy Lyons mistook the Defendant for the Defendant's brother because they looked alike. Deputy Lyons acknowledged that he did not know if the Defendant's brother was present before Deputy Lyons arrived on the scene. He also acknowledged that the Defendant was "acting crazy."

Deputy Lyons testified that he and the Defendant arrived at the detention center at 9:04 a.m. The Defendant made his first jailhouse telephone call just nine minutes later. Deputy Lyons acknowledged that the Defendant sounded "more cogent and lucid" during the later three telephone calls than the first call. Although Deputy Lyons had dashboard and body cameras on the day of the incident, neither was operational. He did not test the pistol for fingerprints, and he did not collect the knives dropped by the Defendant. Deputy Lyons acknowledged that it was not a crime for the Defendant to have the knives on the Defendant's property.

At the conclusion of Deputy Lyons' testimony, the State rested its case. The Defendant did not present any proof, and the jury convicted him as charged of unlawful

possession of a firearm after having been convicted of a felony crime of violence, a Class B felony. After a sentencing hearing, the trial court sentenced him as a Range III, career offender to thirty years in confinement with a release eligibility of eighty-five percent.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant claims that the evidence is insufficient to support his conviction, especially when considering the jailhouse telephone calls, which were unfairly prejudicial. In support of his insufficient evidence claim, he notes that Deputy Lyons was the only person to see him with a gun and that the officer did not video record the incident or submit the gun for fingerprint testing. The State argues that the evidence is sufficient. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

Therefore, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

- 4 -

Relevant to this case, Tennessee Code Annotated section 39-17-1307(b)(1)(A) provides that "[a] person commits an offense who unlawfully possesses a firearm . . . and . . . [h]as been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon[.]" Aggravated burglary is a Class C felony. Tenn. Code Ann. § 39-13-1003(b) (Supp. 2021).[1] Aggravated burglary is also a crime of violence. Tenn. Code Ann. § 39-17-1301(3).

Taken in the light most favorable to the State, the evidence established that the Defendant's neighbor saw him wielding knives on the morning of November 23, 2021. Concerned, the neighbor telephoned the police. When Deputy Lyons arrived, he ordered the Defendant to drop the knives and come to him, and the Defendant complied. However, the Defendant put his hand into his pocket, so Deputy Lyons grabbed the Defendant's wrist and discovered that the Defendant was holding a gun. In three of the four jailhouse telephone calls played for the jury, the Defendant admitted having the gun. In the fourth call, his father asked if he was going to obtain another pistol if he got out of jail. The Defendant did not deny having the gun and responded, "No, I won't do that. I'm going to try to do right if you'll help me." Although the Defendant contends that the evidence is insufficient because Deputy Lyons was the only person to see him with the gun, it was the jury's prerogative to accredit the officer's testimony. Therefore, the evidence is sufficient to support the conviction.

To the extent the Defendant is arguing that the trial court erred by admitting the jailhouse telephone calls into evidence because they were unfairly prejudicial, the Defendant did not raise this issue in his motion for new trial. Therefore, it is waived. *See* Tenn. R. App. P. 3(e) (providing that an issue regarding the admission or exclusion of evidence will be treated as waived if not raised in a motion for new trial).

## II. Bifurcation

The Defendant claims that the trial court erred by refusing to bifurcate the trial so that the jury decided his guilt on whether he intentionally, knowingly, or recklessly possessed the firearm before the State introduced evidence of his prior conviction. He also contends that the error was highly prejudicial because it allowed the jury to perceive him as a violent felon for the entirety of the trial. The State argues that the trial court did not err. We agree with the State.

Before trial, the Defendant filed a motion to bifurcate the trial. He also filed a motion for a special jury instruction, requesting that in the event the trial court denied his motion to bifurcate, the trial court instruct the jurors that they could not draw any inference

---

[1] Aggravated burglary was previously codified at Tennessee Code Annotated section 39-14-403.

- 5 -

from his prior conviction and that they could only consider his prior conviction to prove an element of the charged offense. The State responded to both motions, arguing that pursuant to *State v. Carter*, No. M2014-01532-CCA-R3-CD, 2016 WL 7799281, at *27 (Tenn. Crim. App. Mar. 8, 2016), *overruled on other grounds by State v. Menke*, 590 S.W.3d 455, 468 (Tenn. 2019), the trial court was not required to bifurcate a trial for the stand-alone crime of unlawful possession of a weapon by a convicted felon and that the Defendant's special jury instruction was already included in the trial court's general instructions. On July 27, 2023, the trial court entered an order denying the motions.

"Rulings on the admissibility of evidence are largely within the sound discretion of the trial court." *State v. James*, 81 S.W.3d 751, 760 (Tenn. 2002) (citing *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997)). "Bifurcation concerns splitting a charge into two separate determinations involving guilt and punishment by the same jury." *State v. Richardson*, No. W2016-02227-CCA-R3-CD, 2018 WL 821775, at *15 n.12 (Tenn. Crim. App. Feb. 9, 2018), *no perm. app. filed*. A trial court may order bifurcation when "necessary 'in order to avoid undue prejudice.'" *State v. Johnson*, No. W2018-01222-CCA-R3-CD, 2019 WL 6045569, at *13 (Tenn. Crim. App. Nov. 14, 2019) (quoting *State v. Nash*, 294 S.W.3d 541, 546 (Tenn. 2009)), *perm. app. denied* (Tenn. Apr. 1, 2020). Bifurcation is "the better procedure [when] the defendant is charged with offenses involving the use of violence and force and also charged with the status offense of unlawful possession of a firearm for having a similar prior felony conviction." *State v. Foust*, 482 S.W.3d 20, 46-47 (Tenn. Crim. App. 2015).

Nevertheless, our supreme court has stated that "the name or nature of crimes other than that for which the defendant is on trial is relevant to establish an essential element of the crime for which the defendant is being tried." *James*, 81 S.W.3d at 760. In *Johnson*, this court stated that stipulating to prior felonies also is a "valid avenue[]" for a defendant charged with possession of a firearm by a convicted felon. 2019 WL 6045569, at *14. Since *Johnson*, this court has continued to hold that bifurcation is not required. *See State v. Howard*, No. W2020-00207-CCA-R3-CD, 2021 WL 144235, at *3 (Tenn. Crim. App. Jan. 15, 2021) (citing *State v. Buchanan*, No. M2017-02268-CCA-R3-CD, 2019 WL 852192, at *6 (Tenn. Crim. App. Feb. 21, 2019)), *perm. app. denied* (Tenn. May 14, 2021); *Richardson*, 2018 WL 821775, at *16; *Carter*, 2016 WL 7799281, at *27.

Initially, we note that the record does not reflect whether the trial court held a hearing on the Defendant's motion to bifurcate. Moreover, although the Defendant raised the bifurcation issue in his motion for new trial, he failed to include a transcript of the motion for new trial hearing, in which the parties and the trial court may have discussed a bifurcation hearing, in the appellate record. If the trial court held a hearing on the motion to bifurcate and the Defendant failed to include the transcript of the hearing in the appellate record, then the issue would be waived. Tenn. R. App. P. 24(b); *State v. Oody*, 823 S.W.2d

554, 559 (Tenn. Crim. App. 1991) (providing that in the absence of an adequate record on appeal, this court must presume that the court's actions below are correct and are supported by sufficient evidence).

In any event, the Defendant was charged with only one offense, and the State was required to prove as an element of that offense that he had a prior conviction for a felony crime of violence. The record does not reflect that the Defendant offered to stipulate to the prior conviction. Additionally, the trial court instructed the jury during the final charge, "If you find from the proof that the defendant has been convicted of another crime or crimes [other] than that for which he is presently on trial, you may not consider such evidence as proof of his disposition to commit the crime for which he is on trial." We generally presume that a jury has followed the trial court's instructions. *See State v. Butler*, 880 S.W.2d 395, 399 (Tenn. Crim. App. 1994). Finally, given the evidence against the Defendant, which included his own statements to his father about possessing the gun, any error would be harmless. *See* Tenn. R. App. P. 36(b). Accordingly, we conclude that the Defendant is not entitled to relief on this issue.

## CONCLUSION

Upon our review, we affirm the judgment of the trial court.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE

- 7 -