
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 22, 2017 Session

## STATE OF TENNESSEE v. BOBBY JOE CAMPBELL

**Appeal from the Criminal Court for Sullivan County**
**No. S64036     James F. Goodwin, Judge**

_____

### No. E2016-00389-CCA-R3-CD

_____

The defendant, Bobby Joe Campbell, appeals his Sullivan County Criminal Court jury conviction of second offense driving under the influence ("DUI"), arguing that the trial court committed plain error by failing to declare a mistrial following certain comments from a member of the jury, that the evidence was insufficient to support his conviction, and that the sentence is excessive. We affirm the judgment of the trial court but remand the case for the entry of a corrected judgment that reflects the 180-day period of confinement ordered by the trial court.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed; Remanded

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Cameron L. Hyder, Elizabethton, Tennessee (on appeal), and Dan Smith, Jonesborough, Tennessee (at trial), for the appellant, Bobby Joe Campbell.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Benjamin Rowe, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant's conviction relates to events that occurred during the early morning hours of May 22, 2014. On that date, Sullivan County Sheriff's Office ("SCSO") Officer Michelle Gilliam "was dispatched to the Scotchman Fuel Station at [the] Highway 126 and Highway 75 intersection." When she arrived, she observed a maroon Dodge Challenger "parked to the side of the building" with the engine running. Officer Gilliam observed the defendant "slumped over the driver's side wheel of the

vehicle." Officer Gilliam knocked on the window, shined her flashlight into the defendant's face, and spoke loudly in an attempt to rouse the defendant.

When the defendant eventually awoke, "he just sat there with a blank stare." He then had difficulty complying with Officer Gilliam's request that he roll down the window so that she "could talk to him to make sure he was okay, to check his welfare." When she asked the defendant to turn the vehicle off, the defendant first turned the radio up, then "he put his foot on the gas pedal and revved the engine and then he turned the engine off." Officer Gilliam "noticed the strong smell of alcohol . . . coming from his person," so she asked the defendant to step out of the vehicle. "When he stepped out of the vehicle[,] he actually had to lean upon his car to catch himself so he wouldn't fall." Upon questioning, the defendant told Officer Gilliam that he had consumed "a couple of mixed drinks and some beers at a friend's house."

Before the defendant began the testing, Officer Gilliam asked whether "he had any disabilities that would hinder him from completing" the field sobriety tests, and the defendant replied that he did not. She then demonstrated and asked the defendant to perform the one-legged stand. The defendant "actually tried this test two times and both times he put his foot down on the first count and used his arms for balance." Officer Gilliam next demonstrated and asked the defendant to perform the walk and turn test, using one of the parking lot lines for guidance. The defendant performed poorly and "never managed to step on the line of the parking space that we used for the straight line," then stumbled and nearly fell after taking only four steps.

At that point, Officer Gilliam placed the defendant under arrest for DUI. The defendant refused to provide blood for blood alcohol testing.

During cross-examination, Officer Gilliam acknowledged that she did not observe the defendant's driving because his vehicle was parked in a parking space at the gas station with the engine running. Officer Gilliam agreed that the defendant was wearing cowboy boots at the time, but she could not recall his telling her that he could not perform the field sobriety tests because of the boots. Officer Gilliam said that she did not return to her vehicle to activate the video camera inside the cruiser because she "didn't want to turn [her] back" to the defendant. She conceded that she could have asked the other officer who was with her to activate the camera but did not.

SCSO Officer Cody Cookenhour worked as a backup to Officer Gilliam when she responded to the call at the gas station. Officer Cookenhour observed the defendant "asleep at the steering wheel with the vehicle running at the gas station." The defendant finally awoke after "four or five" attempts to wake him by knocking on the window. It took the defendant "several minutes to actually roll down the window," and

when he was asked to turn the car off, the defendant first "turned the radio up instead of cutting the car off and then he revved his motor up instead of cutting the car off." When the defendant finally succeeded in turning the car off, the officers asked him to step out of the vehicle. "Upon stepping out[,] he was very unsteady on his feet leaning against his car for balance." The defendant had "a strong odor of alcohol" and "admitted to having mixed drinks and beers probably an hour or so beforehand." The defendant then performed poorly on both the one-legged stand and the walk and turn test, with Officer Gilliam being forced to stop the latter test for the defendant's "safety to keep him from falling." It was Officer Cookenhour's opinion that the defendant was too impaired to drive.

During cross-examination, Officer Cookenhour conceded that he did not activate the video camera inside his cruiser, explaining, "They just cut on with the lights automatically and once we made contact with him we never really had the chance or opportunity to go back and turn it on." Officer Cookenhour recalled that the defendant was wearing cowboy boots, but he did not hear the defendant tell Officer Gilliam that he was having difficulty walking because of the boots.

The defendant testified that at the time of the offense, he had just been promoted to meat manager at Food City and that he was "working a lot of hours" "trying to get it into shape." He estimated that he had worked "[r]ight around 100 hours for a couple of weeks" prior to the offense. He said that just before his encounter with Officer Gilliam, he had driven his girlfriend home after a date when he began to feel "sleepy." The defendant recalled that "[i]t was pouring . . . sheets of rain" and that the weather "was cool." The defendant pulled into the gas station, "secured the car and turned the heat on and raised the seat back and went to sleep." To "secure the car," the defendant "[p]ut it in neutral and pushed the emergency brake in the floor." The defendant testified that his vehicle, a Dodge Challenger, was equipped with "a six speed manual shift and push button start," which meant that the car did not have a key-activated ignition switch and "[n]o park."

At some point, the defendant "awakened and turned and saw somebody at" the car window and heard "a girl's voice." The defendant observed Officer Gilliam and Officer Cookenhour standing at the window, and the officers told him to roll down the window. When he rolled the window down, Officer Gilliam asked him if he'd "been drinking," and he told her that he had not. She then "looked in the car and said 'Well, what's that,'" indicating the "open beer container sitting in the console." Officer Gilliam then asked the defendant to step out of the car.

The defendant said that he told the officer that he could not perform the field sobriety tests because he did not have proper footwear, explaining, "I said, 'I've got

these boots on and I can't do a field sobriety test in them sober, you know, so there's no way I can walk in them.' They had high heels." He claimed that Officer Gilliam "kept insisting" that he "take a field sobriety test" despite his statement. The defendant said that he did not actually attempt any field sobriety test but instead "showed her that [he] could not walk in them boots." The defendant said that he did not understand the implied consent form. The defendant denied that he was intoxicated at the time of his arrest.

During cross-examination, the defendant said that the gas station was "a 35 minute drive" from his residence, agreed that he had stopped there to take a nap, and conceded that he had drunk "over half" of the open beer that was in his car. Asked about the implied consent form, the defendant said that he "really didn't understand none of it."

Based upon this evidence, the jury convicted the defendant of DUI and, in a bifurcated proceeding, concluded that the defendant had previously been convicted of DUI, making this the defendant's second offense. Following a sentencing hearing, the trial court imposed a sentence of 11 months and 29 days, with 180 days to be served in confinement and the balance of the sentence to be served on probation.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant asserts that the trial court committed plain error by failing to declare a mistrial after one of the jurors made a complimentary comment about Officer Cookenhour, that the evidence was insufficient to support his conviction, and that the trial court erred by ordering that the defendant serve 180 days in confinement. We consider each claim in turn.

*I. Mistrial*

The defendant asserts that the trial court committed plain error by failing to declare a mistrial after a juror made a complimentary remark about Officer Cookenhour in open court. The State contends that the trial court did not err.

The record establishes that just after the State called Officer Cookenhour as a witness, the following exchange occurred:

> OFFICER GOTT:    Judge, you've got a juror ---
> COURT:      Yes, sir.
> MR. ASHFORD:     Your Honor, I need to inform the
> Court that Officer Cookenhour is a former student of mine. I
> don't know if that disqualifies me from hearing his testimony
> or anything like that but I thought I should bring it to your
> attention.

-4-

THE COURT: All right, you can be seated. The fact that you know Officer Cookenhour is that going to influence your ability to sit there and listen to his testimony just like anybody else?

MR. ASHFORD: No, sir.

THE COURT: Does he have a head start with regard to his credibility or trustworthiness over anybody else?

MR. ASHFORD: He was a good student.

THE COURT: But can you put him on an even playing field ---

MR. ASHFORD: Yes, sir.

THE COURT: -- as every other witness?

MR. ASHFORD: Yes, sir.

THE COURT: And you're confident you can do that?

MR. ASHFORD: Yes, sir.

At the conclusion of the exchange, the defendant asked that Mr. Ashford be excused, and the trial court granted the request. The defendant did not ask the trial court to grant a mistrial and did not request an instruction with regard to Mr. Ashford's statement.

As the defendant concedes, his failure to make a contemporaneous objection to the ruling of the trial court prevents plenary consideration of the issue on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987). Nevertheless, he asks this court to hold as plain error the trial court's failure to sua sponte declare a mistrial.

This court will grant relief for plain error pursuant to Rule 36(b) only when:

"(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake."

*State v. Cooper*, 321 S.W.3d 501, 506 (Tenn. 2010) (quoting *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010)). Our supreme court has emphasized that "all five factors

-5-

must be established by the record before" this court may "recognize the existence of plain error." *State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000). Moreover, "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.*

The decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court, and this court will disturb the trial court's ruling in this regard only when there has been an abuse of the trial court's discretion. *State v. Nash*, 294 S.W.3d 541, 546 (Tenn. 2009). "Normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003) (citing *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991)). "In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did." *Saylor*, 117 S.W.3d at 250 (quoting *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000)). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). The burden of establishing the necessity for mistrial lies with the party seeking it. *Id.*

Under the circumstances presented here, plenary consideration of the defendant's claim is not warranted because the defendant has failed to establish any of the prerequisites to plain error review. After Mr. Ashford advised the court of his prior relationship with Officer Cookenhour, the court inquired into the nature of the relationship and any impact it might have on Mr. Ashford's consideration of the evidence. Even though Mr. Ashford indicated that he would follow the instructions of the trial court and give no special consideration to Officer Cookenhour's testimony, the trial court granted the defendant's request to excuse Mr. Ashford from the jury. Although it might have been preferable for the trial court to conduct its inquiry out of the presence of the other jurors, no evidence suggests that Mr. Ashford's brief statement that Officer Cookenhour "was a good student" had any effect on the jury that actually delivered the conviction. *See State v. Howell*, 868 S.W.2d 238, 248 (Tenn. 1993) (holding that "any error in this regard is harmless unless the jury who heard the case was not fair and impartial."). Because no evidence suggested a prejudicial impact on the remaining jurors, we cannot say that the trial court abused its discretion by failing to go beyond the defendant's request that Mr. Ashford be excused and to declare a mistrial. Additionally, we point out than an issue of this type is particularly fraught with the prospect of waiver for tactical purposes. The failure to request a mistrial could have been prompted by the defendant's desire to submit the case to the available panel of jurors, only to be disappointed in their verdict, thus engendering a wish that a mistrial had been requested instead. All in all, the issue does not merit plain error treatment.

*II. Sufficiency*

The defendant argues that the evidence was insufficient to support his conviction because the State failed to establish that he had physical control of his vehicle while intoxicated.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case,

> It is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . or any other premises that is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant . . . that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself which the driver would otherwise possess; . . . .

T.C.A. § 55-10-401(a)(1). To assess whether a defendant was in physical control of a vehicle for purposes of the DUI offense, the trier of fact looks to the totality of the circumstances, including "the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, . . . the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable

of being operated or moved." *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993); *see State v. Turner*, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996) ("[I]n enacting the driving while intoxicated statute, the legislature desired not only to prohibit the operation of a vehicle by an intoxicated individual, but also to remove from the inebriated the option of operating a vehicle.")

In the light most favorable to the State, the evidence adduced at trial established that Officers Gilliam and Cookenhour observed the defendant slumped over the wheel of his still-running vehicle in the parking lot of a Sullivan County gas station. The officers had difficulty rousing the defendant, and, when he awoke, the defendant had difficulty complying with Officer Gilliam's commands. It took him several attempts to roll down the window and then a number of attempts to turn off the car. When he exited the vehicle, the defendant was obviously unsteady on his feet and smelled strongly of alcohol. He admitted to the officers that he had consumed mixed drinks and beer before driving. The defendant then performed poorly on the field sobriety tests. Officer Cookenhour opined that the defendant was impaired. Like the defendant in *Lawrence*, the defendant in this case was alone "inside of the vehicle, behind the wheel, and had possession of the keys." *See Lawrence*, 849 S.W.2d at 765. The vehicle was in working mechanical order, as evidenced by the fact that the engine was running when the officers approached. *See id.* The defendant "could have at any time" driven away "to become a menace to the public." *See id.* This evidence was more than sufficient to support the defendant's conviction. *See, e.g.*, *State v. Gary L. Graham*, No. W2011-00103-CCA-R3-CD (Tenn. Crim. App., Jackson, May 10, 2012) (sufficient evidence of "physical control" when "the defendant was found passed out, slumped over behind the steering wheel of his truck, with the engine running"); *State v. Leonard Brakefield*, No. W2010-02420-CCA-R3-CD (Tenn. Crim. App., Jackson, Dec. 13, 2011) (sufficient evidence of "physical control" when the defendant "was seated in the driver's seat of his vehicle while the vehicle was running"). Although the defendant's testimony differed markedly from that offered by the two officers, the jury, as was its prerogative, accredited the testimony of the officers and rejected the defendant's testimony.

*III. Sentencing*

The defendant contends that the trial court erred by ordering that he serve 180 days of his 11 month and 29 day sentence in confinement.

Neither party presented any testimony at the sentencing hearing. The presentence report, which was exhibited to the hearing, indicates that the defendant had a 2011 conviction of first offense DUI; a 1996 conviction of driving on a revoked license; 1994 convictions of second offense DUI, driving on a revoked license, and reckless

endangerment; 1992 convictions of second offense DUI, and driving on a revoked license; and a 1984 conviction of DUI.

The trial court imposed a sentence of 11 months and 29 days "in the county jail at 75%." The court observed that the defendant's record of driving-related offenses, which included "at least four prior DUIs," was "a very negative factor" in the court's consideration of the appropriate sentence. The court acknowledged that some of the defendant's convictions were decades old but observed that the defendant had already "been given a break" because those offenses "weren't allowed to be counted otherwise he would be in front of [the court] on a felony DUI conviction, not a misdemeanor DUI conviction." The court ordered that the defendant "serve 180 days as computed by the sheriff" with the balance of his sentence to be served on supervised probation.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

Code section 55-10-402 provides that any person convicted of second offense DUI "be sentenced to serve in the county jail or workhouse not less than forty-five (45) consecutive days nor more than eleven (11) months and twenty-nine (29) days." T.C.A. § 55-10-402(2)(a). In our view, the trial court did not abuse its discretion by deviating upwards from the minimum period of confinement provided for in the Code given the defendant's extensive history of driving-related convictions. We agree with the trial court's assessment that the defendant has been given all the leniency to which the age of his convictions entitles him.

Although the trial court ordered the defendant to serve 180 days in jail, the judgment form indicates only a 45-day period of incarceration. When there is a conflict between the transcript and the judgment, the transcript controls. *See State v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991); *see also, e.g.*, State v. *Thomas Bolton*, No.

W2012-02000-CCA-R3-CD, slip op. at 19 (Tenn. Crim. App., Jackson, Jan. 31, 2014) (remanding for entry of correction in judgment form "to carry out the trial court's order vis-a-vis the sentence alignment"); *State v. Jimmy Lee Cullop, Jr.*, No. E2000-00095-CCA-R3-CD, slip op. at 14–15 (Tenn. Crim. App., Knoxville, Apr. 17, 2001) (same).

*Conclusion*

Based upon the foregoing analysis, we affirm the judgment of the trial court but remand the case for entry of a corrected judgment form that reflects a 180-day period of confinement as ordered by the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE