IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2022

## STATE OF TENNESSEE v. CHARLES PERSON-GIBSON

**Appeal from the Criminal Court for Shelby County**
**No. 18-04062        Chris Craft, Judge**

_____

### No. W2021-01094-CCA-R3-CD

_____

Charles Person-Gibson, Defendant, was indicted in a five-count indictment for first degree murder, felony murder, especially aggravated robbery, attempted aggravated robbery, and possession of a firearm by a convicted felon. During trial, Defendant sought a mistrial on the basis that the State elicited improper testimony about Defendant's criminal record. The trial court denied the motion. The jury found Defendant guilty of first degree murder, felony murder, attempted especially aggravated robbery, and possession of a firearm by a convicted felon. Defendant was found not guilty of attempted aggravated robbery. The trial court merged the felony murder conviction with the first degree murder conviction. Defendant was sentenced to an effective sentence of life in prison plus twenty years. After the denial of a motion for new trial, Defendant appeals. On appeal, Defendant challenges the sufficiency of the evidence and the trial court's refusal to grant a mistrial. After review, we affirm the judgments of the trial court but remand the matter to the trial court for amendment of the judgment forms to reflect the sentence as announced by the trial court at the sentencing hearing.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. JOHN EVERETT WILLIAMS, P.J., not participating.[1]

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Charles Person-Gibson.

_____

[1] Judge Williams, the Presiding Judge of the Court of Criminal Appeals, died on September 2, 2022. The members of this panel of the Court acknowledge Judge Williams's steadfast leadership, sharp wit, and overall positive influence on the judiciary during his many years of service to Tennessee. He will be greatly missed by all of his colleagues.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abby Wallace, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In July of 2018, the Shelby County Grand Jury indicted Defendant for premeditated first degree murder, especially aggravated robbery, attempted aggravated robbery, and possession of a firearm by a convicted felon for his role in the death of Adrian Ivory, the victim. The 24-year-old victim was shot and killed behind a neighborhood convenience store on the night of July 12, 2017.

Prior to trial, the trial court determined that the possession of a firearm by a convicted felon offense should be bifurcated from the remainder of the charges. On June 21, 2021, the case proceeded to trial with a sequestered jury.

At trial, the following proof was introduced. On the day of the victim's death, the victim spent time with Ladareyus Jamison and Raymon Sherrod. The men met outside the McLemore Express convenience store that night. Mr. Jamison, the victim, and Mr. Sherrod were "just chilling" near an alley by the rear of the store. Mr. Jamison explained that the men often "kicked it" outside the store at night. Mr. Sherrod recalled that the men got to the store around 5:00 p.m. to drink and smoke marijuana.

At one point, Mr. Jamison decided to go inside the store to buy a beer. While Mr. Jamison was inside, Defendant ran toward the victim and Mr. Sherrod, pointing a gun at them and instructing them to stand still. Mr. Jamison exited the store and saw Defendant pointing a gun at his friends, so he ran back inside the store to get help. Realizing that they were being robbed, Mr. Sherrod ran to his own car to get a gun from the backseat. Before either Mr. Sherrod or Mr. Jamison could get back to help the victim, Defendant had already shot him twice.

As Mr. Sherrod approached Defendant with his own gun, he saw Defendant searching the victim's pockets. Mr. Sherrod fired his weapon, striking Defendant five times. Mr. Jamison heard the gunshots and made it back to the rear of the store in time to see Defendant fall to the ground. Mr. Jamison kicked Defendant and kicked the gun out of Defendant's reach. Mr. Jamison "wasn't thinking" when he picked up Defendant's gun. Mr. Sherrod gave his gun to Mr. Jamison and told him to take both of the guns to "Walk Place." Mr. Sherrod explained that Mr. Jamison's grandmother lived on Walk Place.

- 2 -

Mr. Jamison explained he was in a "state of shock" but nonetheless took both of the guns and ran to his grandmother's house on Walk Place. He left the guns in the front yard and ran back to the scene of the shooting. The police were there by that time but Mr. Sherrod and his car were gone. Mr. Sherrod left the scene, retrieved the guns from the yard on Walk Place, and hid them somewhere in the Orange Mound community.

911 received a call reporting the shooting at the store. Police Officer Shanah Smith of the Memphis Police Department was one of the first officers to arrive at the scene. She described it as "chaotic." First responders were notified. Once they arrived, they transported Defendant and the victim to the hospital.

Mr. Jamison told Officer Smith that the victim had been shot, but did not inform officers that he removed the guns from the scene. Mr. Jamison later identified Defendant from a photographic lineup.

After surveillance video was reviewed, Mr. Sherrod, also known as "Skinny," was identified as a witness. At trial, Mr. Sherrod testified that he got a telephone call from the victim's mother after the shooting. During the call, the victim's mother told Mr. Sherrod that police knew he had the murder weapon. She instructed Mr. Sherrod to leave the gun at a gas station for the police to recover it. Mr. Sherrod followed her instructions, leaving the gun in the grass at a gas station. Mr. Sherrod met Lieutenant Robert Wilkie at the police station and gave a statement. He turned the gun he used to shoot Defendant over to the police. Mr. Sherrod was later charged with tampering with the evidence.

Surveillance video from the convenience store was entered into evidence. The two different angles from the video showed both the front and back of the convenience store.

The medical examiner, Dr. Erica Curry, testified that the victim suffered a gunshot wound to the abdomen. According to Dr. Curry, the manner of death was homicide.

Defendant elected not to testify or present any proof.

At the conclusion of the proof, the trial court granted a motion for judgment of acquittal for especially aggravated robbery but determined that the jury could still consider the lesser included offenses. The jury found Defendant guilty of first degree murder and felony murder. The jury also found Defendant guilty of the attempted especially aggravated robbery of the victim. The jury found Defendant not guilty of the attempted aggravated robbery involving Mr. Sherrod. In a bifurcated hearing, the jury found Defendant guilty of possession of a firearm by a convicted felon. The trial court sentenced Defendant to an effective sentence of life in prison plus twenty years. Defendant filed a timely notice of appeal.

*Analysis*

*Mistrial*

Defendant complains that the trial court abused its discretion by refusing to grant a mistrial after Lieutenant Wilkie testified that Defendant was identified as the suspect from fingerprints and his arrest record despite the trial court's issuance of a curative instruction. The State disagrees.

Our supreme court summarized the law regarding appellate review of a trial court's denial of a motion for mistrial by stating the following:

> "The law is well-settled that the decision of whether or not to enter a mistrial rests within the sound discretion of the trial court. This Court will not interfere with the trial court's decision absent a clear abuse of discretion on the record." [*State v.*] *Reid*, 91 S.W.3d [247,] 279 [Tenn. 2002]. "Normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003). "In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did." *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). The party seeking a mistrial has the burden of establishing its necessity. *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008).

*State v. Bell*, 512 S.W.3d 167, 187 (Tenn. 2015). When determining whether the trial court should have granted a mistrial based upon testimony that was presented to the jury, we consider three nonexclusive factors: "(1) whether the State elicited the testimony, or whether it was unresponsive; (2) whether the trial court offered and gave a curative jury instruction; and (3) the relative strength or weakness of the State's proof." *Id.* at 188 (quoting *State v. Nash*, 294 S.W.3d 541, 547 (Tenn. 2009)).

At trial, during the State's direct examination of Officer Wilkie, the following exchange occurred:

> [State]: Did you find anything that was important to your investigations?
> [Officer]: No, ma'am.
> [State]: . . . did you get more information about the suspect in this case?
> [Officer]: Yes, ma'am.

[State]: Where did that information come from?
[Officer]: Sergeant Murphy had apparently gotten some fingerprints from him and was able to get his name based on his arrest record and his fingerprints.

Defense counsel objected and asked to approach the bench. Counsel for Defendant asked for a mistrial. The trial court held a jury out hearing. The trial court sustained the objection, denied the motion for mistrial, and instructed the jury to disregard the statement. The trial court then gave the jury a curative instruction, stating:

In this case, the officer just testified in order to gather pictures, he - - he had an arrest record of this defendant.

I want - - want you to know, this - - to make sure we understand, this defendant does not have - - doesn't have any other charges. This is his only charge that's before this indictment I mean. This is his only indictment. A lot of times police officers when they're getting photo spreads they look for pictures of people that look like each other, and if they have a picture of someone, because they've been in the system before, they can use that for identification purposes. . . .

The fact that he says that he checked an arrest record to get a picture, I don't want you to use that information at all to consider the guilt or innocence of this defendant. If in fact his picture was taken at some point and placed in here, that has absolutely nothing to do with his guilt or innocence of this offense.

. . . .

That's just something that should not have been said, and for that reason, you can't consider that at all.

The trial court went on to ask each juror individually if they could follow the instruction. Each answered in the affirmative.

Applying the factors listed in *Bell*, we note that the State did not attempt to elicit improper testimony from the officer when the State asked, "[D]id you get more information about the suspect in this case?" The trial court sustained defense counsel's objection and instructed the jury to disregard the testimony. Furthermore, the trial court immediately issued a curative jury instruction. In a case with surveillance video footage of the crime and testimony from both Mr. Jamison and Mr. Sherrod, the officer's testimony did not

- 5 -

result in a manifest necessity for a mistrial. Further, the jury found Defendant not guilty of the attempted aggravated robbery of Mr. Sherrod. As a result, we conclude that the trial court issued a proper curative instruction and did not abuse its discretion in denying the motion for mistrial. Defendant has failed to show manifest necessity required the granting of a mistrial.

*Sufficiency*

Defendant challenges the sufficiency of the evidence concerning his convictions for first degree murder, felony murder, and attempted especially aggravated robbery. Defendant does not appear to challenge his conviction for felon in possession of a firearm. He "does not contest shooting [the victim] but submits that he did not act with premeditation." He posits "that a rational trier of fact would have convicted him only of voluntary manslaughter." Defendant also argues that he "did not attempt to commit especially aggravated robbery" and therefore should not have been convicted of felony murder. Instead, Defendant argues that the "only conclusion a rational trier of fact could have arrived [at] was that [the victim, Mr. Jamison, and Mr. Sherrod] were waiting for [Defendant], an argument ensued, and [Defendant] shot [the victim] in a flawed self-defense scenario." The State insists that the evidence was sufficient.

Our standard for reviewing the sufficiency of the evidence, both direct and circumstantial, is limited. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). We must afford the State "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007) (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). The determinative question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). Although we review de novo the application of the law to the facts, *Jordan v. Knox Cnty.*, 213 S.W.3d 751, 763 (Tenn. 2007) (citing *State v. Thacker*, 164 S.W.3d 208, 247-48 (Tenn. 2005)), we cannot substitute our own inferences for those drawn by the factfinders at trial, *State v. Lewter*, 313 S.W.3d 745, 747-48 (Tenn. 2010). Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (quoting *Hanson*, 279 S.W.3d at 275).

Here, Defendant was charged with and convicted of first degree murder and felony murder. As charged in this case, "[f]irst degree murder is . . . [a] premeditated and intentional killing of another" or "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery." T.C.A. § 39-13-202(a)(1)(2). "Especially aggravated robbery is robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon; and [w]here the victim suffers serious bodily injury." *Id.* § 39-13-403(a). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). To support the felony murder conviction, the intent to commit the underlying felony had to exist before or concurrent with the commission of the act causing the death of the victim. *State v. Buggs*, 995 S.W.2d 102, 107 (Tenn. 1999). A jury can reasonably infer that the defendant had the intent to commit the felony prior to or concurrent with the killing. *Id.* at 108.

Tennessee Code Annotated section 39-13-202(d) defines premeditation as:

> An act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

The State must establish the element of premeditation beyond a reasonable doubt. *See State v. Sims*, 45 S.W.3d 1, 7 (Tenn. 2001); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). Premeditation may be proved by circumstantial evidence. *See, e.g.*, *State v. Brown*, 836 S.W.2d 530, 541-42 (Tenn. 1992). The existence of premeditation is a question of fact for the jury and may be inferred from the circumstances surrounding the killing. *State v. Young*, 196 S.W.3d 85, 108 (Tenn. 2006); *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000). Such circumstances include, but are not limited to, the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, the infliction of multiple wounds, threats or declarations of an intent to kill, a lack of provocation by the victim, failure to aid or assist the victim, the procurement of a weapon, preparations before the killing for concealment of the crime, destruction, and secretion of evidence of the killing, and calmness immediately after the killing. *State v. Kiser*, 284 S.W.3d 227, 268 (Tenn. 2009); *State v. Leach*, 148 S.W.3d 42, 53-54 (Tenn. 2004); *State v. Davidson*, 121 S.W.3d 600, 615 (Tenn. 2003); *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997); *State v. Larkin*, 443 S.W.3d 751, 815-16 (Tenn. Crim. App. 2013).

As charged in this case, "[a] person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense of especially aggravated robbery, [a]cts with intent to complete a course of action or cause a result that would constitute the especially aggravated robbery under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the especially aggravated robbery." T.C.A. § 39-12-101(a)(3).

The evidence, in a light most favorable to the State, indicates that Defendant armed himself with a gun on the night of the incident. Defendant pointed a gun at the victim and Mr. Sherrod while they waited for Mr. Jamison outside the convenience store. Defendant instructed the men to stay still and shot the victim twice. Defendant was seen looking through the victim's pockets. Defendant argues that Mr. Sherrod fled from the scene, took the guns involved in the shooting, and did not initially cooperate with the police during the investigation. However, Mr. Sherrod testified at trial and the State introduced surveillance video of the incident. Mr. Sherrod admitted that he took the guns and was scared because he had never been in trouble before. While Defendant attempts to cast the blame on others, the jury clearly believed Mr. Jamison's and Mr. Sherrod's account of the events that took place that night. This was within their purview. Defendant is not entitled to relief on this issue.

*Sentencing*

In our review of the record, we noted a discrepancy between the sentence pronounced by the trial court at the sentencing hearing and the sentences as reflected by the judgment forms. At the sentencing hearing, the trial court commented that "life plus 20 years would be reasonable under the circumstances." The trial court proceeded to sentence Defendant to life in prison for both Count 1 and Count 2. The trial court merged those convictions for an effective life sentence. In Count 3, the trial court stated that Defendant would be sentenced as a multiple offender to 20 years to be served concurrently with Counts 1 and 2 but consecutively to Count 5. The judgment form for Count 3 contains a handwritten notation that Defendant is a persistent offender. In Count 5, the trial court stated that Defendant would be sentenced to 20 years to be served concurrently with Count 3 but consecutively with Counts 1 and 2 but the judgment form reflects that the sentence should be served consecutively with Counts 1, 2, and 3.

Tennessee Rule of Criminal Procedure 36 states that a court "may at any time correct clerical mistakes in judgments . . . arising from oversight or omission." Clerical errors arise "simply from a clerical mistake in filling out the uniform judgment document." *Cantrell v. Easterling*, 346 S.W.3d 445, 449 (Tenn. 2011). Our supreme court has held that "to determine whether a clerical error has been made, a court ordinarily must compare the judgment with the transcript of the trial court's oral statements." *State v. Brown*, 479

S.W.3d 200, 213 (Tenn. 2015). If a conflict between the transcript and the judgment exists, then the transcript of the court's oral statements control. *Id.* The conflict here between the trial court's oral statements and the judgment forms necessitate a remand for correction of the clerical errors. On remand, the trial court should amend the judgment form in Count 3 to reflect Defendant is a multiple offender. The trial court should also amend the judgment form in Count 5 to reflect that the 20-year sentence is to be served concurrently with Count 3 but consecutively with Counts 1 and 2. To be clear, the sentence imposed by the trial court is a life sentence, plus an additional 20 years.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed and remanded for correction of clerical errors.

_____
TIMOTHY L. EASTER, JUDGE